1  MARK D. CAMPBELL (SBN 180528)
   mcampbell@loeb.com
2  WILLIAM M. BRODY (SBN 229901)
   wbrody@loeb.com
3  LOEB & LOEB LLP
   10100 Santa Monica Boulevard, Suite 2200
4  Los Angeles, California 90067-4120
   Telephone:    310-282-2000
5  Facsimile:    310-282-2200

6  ANDREW E. ASCH (SBN 198857)
   aasch@roll.com
7  SARAH C. ABBOTT (SBN 231863)
   sabbott@roll.com
8  ROLL INTERNATIONAL CORPORATION-LEGAL DEPT.
   11444 West Olympic Boulevard, 10th Floor
9  Los Angeles, California 90064-1557
   Telephone:    310-966-5700
10 Facsimile:    310-966-5758

11 Attorneys for Defendants
   FIJI WATER COMPANY LLC, FIJI
12 WATER COMPANY HOLDINGS LLC, and
   PARAMOUNT INTERNATIONAL
13 EXPORT LTD.

14

                    UNITED STATES DISTRICT COURT
15
                  NORTHERN DISTRICT OF CALIFORNIA
16
                        SAN JOSE DIVISION
17

18 | CG ROXANE LLC, a California limited | ) | Case No.  C-07-2258-RMW |
   | liability company, | ) | |
19 | | ) | **DEFENDANTS' NOTICE OF MOTION** |
   | Plaintiff, | ) | **AND MOTION FOR SUMMARY** |
   | | ) | **JUDGMENT; MEMORANDUM OF** |
20 | v. | ) | **POINTS AND AUTHORITIES** |
   | | ) | |
21 | FIJI WATER COMPANY LLC, a Delaware | ) | [F.R.C.P. 56; Local Rule 56-1, 56-2] |
   | limited liability company; FIJI WATER | ) | |
22 | COMPANY HOLDINGS LLC, a Delaware | ) | Date:    May 30, 2008 |
   | limited liability company; PARAMOUNT | ) | Time:    9:00 a.m. |
23 | INTERNATIONAL EXPORT, LTD., a | ) | Judge:    Hon. Ronald M. Whyte |
   | Cayman Islands Company Limited by Shares; | ) | |
24 | and DOES 1 through 20, inclusive, | ) | Complaint Filed:    April 23, 2007 |
   | | ) | |
25 | Defendants. | ) | |
   | | ) | |
26 | —————————————————————— | ) | |
   | | ) | |
27 | FIJI WATER COMPANY LLC, a Delaware | ) | |
   | limited liability company; FIJI WATER | ) | |
28 | | | |

LA1758372.2
207102-10007
C-07-2258-RMW

1  COMPANY HOLDINGS LLC, a Delaware           )
   limited liability company; PARAMOUNT        )
2  INTERNATIONAL EXPORT, LTD., a               )
   Cayman Islands Company Limited by Shares;    )
3  and DOES 1 through 20, inclusive,           )
                                               )
4              Counterclaimants,               )
                                               )
5          v.                                  )
                                               )
6  CG ROXANE LLC, a California limited          )
   liability company,                          )
7                                              )
               Counterdefendant.               )
8  _____)

9

10 **TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

11     **PLEASE TAKE NOTICE** that at 9:00 a.m. on May 30, 2008, or as soon thereafter as this

12 matter may be heard by the above-entitled Court, in the courtroom of the Honorable Ronald M.

13 Whyte, 280 South First Street, San Jose, California 95113, Defendants Fiji Water Company LLC,

14 Fiji Water Company Holdings LLC, and Paramount International Export Ltd., will and hereby do

15 move for summary judgment, or as the case may be, partial summary judgment, of the claims and

16 issues presented in Plaintiff CG Roxane LLC's Complaint, as well as the claims and issues raised

17 in Defendants' Counterclaim, pursuant to Federal Rule of Civil Procedure 56.

18     This motion is based on this Notice of Motion and Motion for Summary Judgment, the

19 following Memorandum of Points and Authorities, the Declaration of Mark D. Campbell and

20 attached exhibits, the Declaration of John Cochran and attached exhibits; Defendants' Request for

21 Judicial Notice and attached exhibits, the pleadings and other papers on file in this action, and any

22 other material that may come before the Court at the time of the hearing.

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

LA1758372.2
207102-10007                                 2
C-07-2258-RMW

1 | This motion is made following the conference of counsel which took place on April 9, 2008, at

2 | which time Defendants confirmed that the date selected for hearing would not cause undue

3 | prejudice, as required by the Court's Standing Order.

4

5 | Dated: April 25, 2008                          LOEB & LOEB LLP
                                                   MARK D. CAMPBELL
6                                                  WILLIAM M. BRODY

7

8                                                  By: /s/ Mark D. Campbell
                                                       MARK D. CAMPBELL
                                                       Attorneys for Defendants
9                                                      FIJI WATER COMPANY LLC, FIJI WATER
                                                       COMPANY HOLDINGS LLC, and
10                                                     PARAMOUNT INTERNATIONAL EXPORT
                                                       LTD.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

1

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ........................................................................................................ 1

II.    FACTUAL BACKGROUND ..................................................................................... 2

       A.    Defendants' Use Of "Bottled At The Source" ........................................ 2

       B.    Plaintiff's Generic and Descriptive "Bottled At The Source" Mark ...................... 4

       C.    Third Parties' Generic Use of "Bottled At The Source" and "Bottled At Source" ............................................................................................. 4

III.   LEGAL STANDARD FOR SUMMARY JUDGMENT ................................... 5

IV.    THE ALLEGED MARK IS NOT PROTECTABLE .......................................... 5

       A.    The Phrase "Bottled At The Source" Is Generic And Therefore Not Protectable ........................................................................................... 5

       B.    Alternatively, The Mark Is Descriptive Without Secondary Meaning ................. 9

V.     DEFENDANTS' USE OF "BOTTLED AT SOURCE" IS "FAIR USE" ...................... 11

VI.    PLAINTIFF'S FEDERAL AND STATE TRADEMARK AND UNFAIR COMPETITION CLAIMS (1, 2, 3, 4, AND 5) FAIL AS A MATTER OF LAW ......................................................................................................................... 13

       A.    Plaintiff Cannot Establish Confusion ................................................... 14

             1.    Plaintiff's mark is weak ............................................................ 14

             2.    Examined in context, the marks are dissimilar ......................... 15

             3.    Relatedness of the goods ........................................................... 17

             4.    Defendants' intent. .................................................................... 17

             5.    Plaintiff cannot meet its burden of showing actual confusion ................. 18

             6.    Marketing channels. .................................................................. 18

             7.    Defendants' use does not hinder any expansion plans .............. 18

             8.    Consumers' relatively high degree of care in the purchase of bottled water products. ............................................................ 19

       B.    There is No Evidence to Support Plaintiff's Claims 3 and 4 for Trademark Dilution ................................................................................. 19

VII.   PLAINTIFF'S INJURY TO BUSINESS REPUTATION CLAIM (CLAIM 6) HAS NO BASIS IN LAW OR FACT ........................................................... 21

**Page**

VIII.   PLAINTIFF'S CONVERSION CLAIM (CLAIM 7) FAILS ............................................ 21

IX.   PLAINTIFF'S INTERFERENCE CLAIMS (CLAIMS 8 AND 9) FAIL AS
         A MATTER OF LAW ..................................................................................................... 22

X.   PLAINTIFF'S FALSE ADVERTISING CLAIM (CLAIM 10) FAILS
        BECAUSE DEFENDANTS' STATEMENT THAT THEIR PRODUCT IS
        "BOTTLED AT SOURCE" IS NOT FALSE OR MISLEADING .................................. 23

XI.   THERE IS NO ALLEGATION OR EVIDENCE OF ANY NEGLIGENT
         OR INTENTIONAL MISREPRESENTATION BY DEFENDANTS TO
         PLAINTIFF (CLAIMS 11, 12) ...................................................................................... 24

XII.   CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*
    616 F.2d 440 (9th Cir. 1980)..................................................................................... 17

*American 23Rolex Watch Corp. v. Ricoh Time Corp.*
    491 F.2d 877 (2d Cir. 1974).................................................................................... 16

*AMF, Inc. v. Sleekcraft Boats*
    559 F.2d 341 (9th Cir. 1979)..............................................................................14-16, 19

*Avery Dennison Corp. v. Sumpton*
    189 F.3d 868 (9th Cir. 1999).................................................................................... 20

*Bertero v. National General Corp.*
    13 Cal.3d 43 (1974).................................................................................................. 21

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*
    973 F.2d 1033 (2d Cir.1992)................................................................................... 16

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*
    174 F.3d 1036 (9th Cir.1999)................................................................................. 14

*Burlesci v. Petersen,*
    68 Cal.App.4th 1062 (1998)...............................................................................21-22

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ......................................................................................... 5, 10

*Classic Foods Int'l Corp. v. Kettle Foods Inc.*
    486 F.Supp.2d 1181 (C.D. Cal. 2007)...........................................................Passim

*Cleary v. News Corp.*
    30 F.3d 1255 (9th Cir.1994).................................................................................... 13

*Colaprico v. Sun Microsystems, Inc.*
    758 F.Supp. 1335 (N.D.Cal.1991) ....................................................................... 25

*Colt Defense LLC v. Bushmaster Firearms Inc.*
    486 F.3d 701 (1st Cir. 2007) ...............................................................................7-9

*Conversive, Inc. v. Conversagent, Inc.*
    433 F.Supp.2d 1079 (C.D. Cal. 2006)................................................................... 13

*Della Pena v. Toyota Motor Sales, U.S.A., Inc.*
    11 Cal.4th 376 (1995)..........................................................................................22-23

1

**Page(s)**

2

3

*Eniva Corp. v. Global Water Solutions, Inc.*
 440 F.Supp.2d 1042 (D.Minn. 2006) ........................................................ 19

4

*Filipino Yellow Pages, Inc. v Asian Journal Publications, Inc.*
 198 F.3d 1143 (9th Cir. 1999) .......................................................... 6, 9-10

5

6

*Frehling Enter., Inc. v. International Select GrP., Inc.*
 192 F.3d 1330 (11th Cir. 1999) ............................................................... 15

7

8

*Google Inc. v. American Blind & Wallpaper Factory, Inc.*
 2005 WL 832398 (N.D.Cal. 2005) .......................................................... 23

9

10

*In re Dual-Deck Video Cassette Recorder Antitrust Litigation, Go-Video, Inc. v. Matsushita Electrical Industrial Co., Ltd.*
 11 F.3d 1460 (9th Cir. 1993) ........................................................... 11, 17

11

12

*In re Dual-Deck Video Cassette Recorder Antitrust Litigation v. Matsushita Electrical Industrial Co., Ltd.*
 1991 WL 425379 ........................................................................... 11-12

13

14

*Japan Telecom, Inc. v. Japan Telecom America Inc.*
 287 F.3d 866 (9th Cir. 2002) ................................................................. 10

15

16

*Jones v. Deja Vu, Inc.*
 2005 WL 1629941 (N.D.Cal. 2005) ........................................................ 23

17

*Kendall-Jackson Winery v. E. & J. Gallo Winery*
 150 F.3d 1042 (9th Cir. 1998) ............................................................... 14

18

19

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*
 543 U.S. 111 (2004) ...................................................................... 6, 11

20

*Krav Maga Ass'n of America, v. Yanilov*
 464 F.Supp.2d 981 (C.D.Cal.2006) ......................................................... 7, 9

21

22

*Lang v. Retirement Living Pub. Co.*
 949 F.2d 576 (2d Cir. 1991) ................................................................ 15

23

24

*Levi Strauss & Co. v. Blue Bell, Inc.*
 778 F.2d 1352 (9th Cir.1985) ........................................................... 13, 18

25

26

*Lindy Pen Co., Inc. v. Bic Pen Corp.*
 725 F.2d 1240 (9th Cir.1984) ........................................................... 15-16

27

*M2 Software, Inc. v. Madacy Entm't*
 421 F.3d 1073 (9th Cir. 2005) ............................................................... 13

28

Page(s)

*Meeker v. Meeker*
    2004 WL 2554452 (N.D.Cal. 2004)...............................................................21-22

*Nabisco, Inc. v. Warner-Lambert Co.*
    220 F.2d 43 (2d Cir. 2000)............................................................................. 16

*Nabisco, Inc. v. Warner-Lambert Co.*
    220 F.3d 43 (2d Cir.2000)......................................................................... 15, 17

*New Kids on the Block v. News America Pub., Inc.*
    971 F.2d 302 (9th Cir. 1992)......................................................................... 11

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*
    210 F.3d 1099 (9th Cir. 2000).................................................................... 5, 10

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.*
    269 F.3d 114 (2d Cir. 2001).......................................................................... 16

*Panavision Intern., L.P. v. Toeppen*
    141 F.3d 1316 (9th Cir. 1998)...................................................................19-20

*Playtex Products, Inc. v. Georgia-Pacific Corp.*
    390 F.3d 158 (2d Cir. 2004).......................................................................... 16

*Pristine Industries, Inc. v. Hallmark Cards, Inc.*
    753 F. Supp. 140 (S.D.N.Y. 1990)................................................................. 16

*Retail Services Inc., v. Freebies Publishing*
    364 F.3d 535 (4th Cir 2004).......................................................................6, 8-9

*Rodeo Collection, Ltd. v. West Seventh*
    812 F.2d 1215 (9th Cir. 1987)....................................................................... 14

*Rudolph Intern. Inc. v. Realys, Inc.,*
    482 F.3d 1195 (9th Cir. 2007)....................................................................6, 8-9

*Schafer Co. v. Innco Management Corp.*
    797 F. Supp. 477 (E.D.N.C. 1992)................................................................ 12

*Schmid Laboratories v. Youngs Drug Products Corp.*
    482 F.Supp. 14 (D.C.N.J. 1979).................................................................... 12

*Schwan's IP, LLC v. Kraft Pizza Co.*
    460 F.3d 971 (8th Cir. 2006).......................................................................6-7, 9

*Security Officers Service, Inc. v. State Compensation Ins. Fund*
    17 Cal.App.4th 887 (1993)............................................................................ 25

**Page(s)**

*Self-Insurance Institute of Am. v. Software and Info. Indus. Ass'n*
    208 F. Supp. 2d 1058 (C.D. Cal. 2000)..................................................................... 18

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization*
    59 F.3d 902 (9th Cir. 1995)....................................................................6, 9-10

*Shamsian v. Atlantic Richfield Co.*
    107Cal. App. 4th 967 (2003).................................................................... 24

*Southland Sod Farms v. Stover Seed Co.*
    108 F.3d 1134 (9th Cir. 1997).................................................................. 24

*Star Markets, Ltd. v. Texaco, Inc.*
    No. Civ. 95-01018 BMK, 1996 WL 780472 (D. Haw. Dec. 11, 1996) ........................... 15, 18

*Surfvivor Media, Inc. v. Survivor Productions*
    406 F. 3d 625 (9th Cir. 2005)............................................................14, 17-19

*Surgicenters of Am., Inc. v. Medical Dental Surgeries Co.*
    601 F.2d 1011 (9th Cir.1979)................................................................... 6

*Thane Intern., Inc. v. Trek Bicycle Corp.*
    305 F.3d 894 (9th Cir. 2002)...............................................................20-21

*Thrifty-Tel, Inc. v. Bezenek*
    46 Cal.App.4th 1559 (1996)..................................................................... 21

*Walker & Zanger, Inc. v. Paragon Industries, Inc.*
    2007 WL 1302980 (N.D.Cal. 2006)........................................................... 24

*Weller v. American Broadcasting Companies, Inc.*
    232 Cal.App.3d 991 (1991)..................................................................... 21

*White Swan, Ltd. v. The Nature Company*
    1993 WL 216133 (D. Or. 1993).................................................................. 14

*Youst v. Longo*
    43 Cal.3d 64 (1987).............................................................................. 22

*Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*
    698 F.2d 786 (5th Cir.1983).................................................................... 12

LA1758372.2
207102-10007

**Page(s)**

**STATUTES**

15 U.S.C. §§ 1052, 1064(c)..................................................................................... 5, 10

15 U.S.C. §§ 1052(e), (f)............................................................................................ 9

15 U.S.C. § 1115(b)(4).............................................................................................. 11

15 U.S.C. § 1125(c)(3).............................................................................................. 11

Cal. Bus. Prof. Code § 14320 *et. seq.*................................................................... 21

Cal.Civ.Code § 1709................................................................................................ 24

Cal. Bus. Prof. Code § 17500.............................................................................. 23-24


**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 56....................................................................... 2-3

Unfair Competition § 14:17 (4th ed. 2007)............................................................ 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

By way of its meritless lawsuit, Plaintiff CG Roxane LLC ("Plaintiff") is attempting to belatedly assert a monopoly on the universally common phrase, "bottled at the source." Recently, after 13 years of non-exclusive use, and previously being rejected by the USPTO, Plaintiff surreptitiously obtained registration of its "mark" "bottled at the source." Several years later, Plaintiff filed this lawsuit alleging that it now has exclusive rights to the phrase in connection with its "Crystal Geyser" bottled water. However, the undisputed evidence shows, not only that the phrase is not protectable as a mark, but that Defendants fairly and legally use the phrase, always placing it near their house mark FIJI®, and only using it to accurately describe the place from which their water is drawn and bottled. Defendants' use of this phrase is consistent with the long-standing practice of countless other major bottled water producers, retailers, and consumers who, since well before Plaintiff, routinely have used the phrase to describe a characteristic of their water. Nonetheless, Plaintiff's complaint speculates that Defendants' use of the phrase somehow confuses consumers because consumers strongly associate this generic phrase with their brand, Crystal Geyser. Plaintiff's case is borderline frivolous: there is absolutely no evidence to support its allegations of confusion, nor any evidence to support its claim that the mark is legally protectable, rather than a common generic phrase.

There are several independent grounds for summary judgment. <u>First</u>, based on the criteria for determining genericness, "bottled at the source" is a generic phrase for which no trademark protection is allowed. The use of the phrase "bottled at the source" in connection with bottled water is an established part of the lexicon. Dozens of bottled water brands have openly used, and continue to use, the phrase "bottled at the source," directly on their water bottles. Many additional brands, retailers, and media sources also routinely and universally use the exact phrase to market, describe and talk about bottled water. None of these many uses of the "mark" refer to Plaintiff or Crystal Geyser. The phrase "bottled at the source" has been generically used for decades and, based on undisputable evidence, it is generic as a matter of law. In the alternative, even if

1  Plaintiff's mark is deemed not generic and instead considered merely "descriptive," it has not

2  acquired any "secondary meaning" and, therefore, is still not a valid or protectable mark.

3      Second, the undisputed evidence establishes that any use by Defendants of Plaintiff's mark

4  or a variation thereof is a permissible, non-trademark "fair use" that accurately describes the

5  geographic origin of their products as having been "bottled at the source" in the islands of Fiji.

6  Fiji Water is in fact bottled at a bottling plant, directly above the source aquifer in Fiji.  Plaintiff

7  does not and cannot make *any* claim that Defendants' use of the phrase is inaccurate, or that FIJI®

8  brand natural artesian water is not actually "bottled at the source."

9      Finally, uncontroverted evidence establishes that Defendants' use of the phrase "bottled at

10  the source" on their products and advertising creates absolutely no risk of consumer confusion

11  because, among other reasons, the phrase is accompanied by Defendants' unique house trademarks

12  and trade dress such that any possible consumer confusion based on the phrase is absolutely

13  negated.  Plaintiff has neither identified nor produced a shred of evidence meeting its burden of

14  demonstrating likelihood of confusion.

15      In addition to its trademark and related claims, Plaintiff has made several other "kitchen-

16  sink" claims against Defendants, each of which, for the reasons explained below, have no

17  evidentiary or legal support.  There is no triable issue of fact on any of Plaintiff's twelve

18  unsupported claims and, therefore, this Court should grant summary judgment as to all of them, as

19  well as to Defendants counterclaim seeking cancellation of Plaintiff's claimed trademark.

20              **II.    FACTUAL BACKGROUND**

21  **A.    Defendants' Use Of "Bottled At The Source"**

22      Defendants' bottled water comes exclusively from an artesian aquifer on the largest island

23  of Fiji and is bottled at a facility in the Yaqara Valley of Viti Levu on the north side of that island

24  directly on top of the aquifer.  *See* Declaration of John Cochran ("Cochran Decl.") ¶¶ 4, 11.  Fiji

25  Water is, quite literally, bottled at the source.  *Id.*  Therefore, on some of their product bottles and

26  other advertising materials, Defendants use the phrase "bottled at source" or "bottled at the

27  source" in an inconspicuous manner next to their prominently displayed trade name, FIJI®, to

28

describe where their product is bottled.  *See id.*   For example, in the Frequently Asked Questions

("FAQ") section of Defendants' website "fijiwater.com," Defendants state:

> *What is FIJI Water?* FIJI Water is an artesian water, bottled at the source on the islands of Fiji. FIJI Water is the result of rainfall that fell long before the Industrial Revolution, filtering slowly through mineral-rich rock over hundreds of years….

> *Is anything added to FIJI Water?* …FIJI Water is an all natural water, bottled at the source, preserved and protected by its natural environment. FIJI Water's mineral composition and taste are the result of its source: an artesian aquifer on the islands of Fiji….

> *Why does FIJI Water have a picture of a palm frond on its label?* …FIJI Water's taste is the result of its source: an artesian aquifer on the islands of Fiji….Bottled at the source and preserved & protected by its natural environment, FIJI Water is untouched by human hands until you unscrew the cap.

Cochran Decl., Ex. A.  There are several other similar examples of such uses.  *Id.*

In addition, the phrase is also placed discretely on two of Defendants' current product

labels in small text on the back of the product simply to describe the product's origin.  Cochran

Decl., Ex. B.  The "Bottled in Fiji. Shipped to you." version of the product back label text asks:

> Why travel to the South Pacific islands of Fiji for a drink of water? FIJI Water's aquifer is in a virgin ecosystem at the edge of a primitive rainforest, thousands of miles from the nearest industrialized continent.  This natural artesian aquifer protects the water until it is bottled at the source and shipped to you.

The "*Untouched by man. Until you drink it.*" version of the product back label states:

> FIJI Water comes from an aquifer deep within the earth on the remote islands of Fiji. Bottled at the source, natural artesian pressure forces the water through a hermetically sealed delivery system free of human contact.  It is never exposed to the environment. At least, until you unscrew the cap.

*See* Cochran Decl., Ex. B.

The phrase "Bottled at Source" is also included in an inconspicuous manner on the back

label of Defendants' bottled water products in small white font on a light blue background.  It is

directly under a house mark FIJI® and an image of Defendants' trade dress incorporating the

FIJI® name, directly above the relevant disclosure of the source of the product stating: "Source:

Yaqara, Viti Levu, Fiji Islands;" and in a font significantly smaller and lighter in contrast than the

3

1   rest of the text on the label, making it virtually invisible[1].  *See* Cochran Decl., ¶ 14, Ex. C;

2   Declaration of Mark D. Campbell ("MC Decl.") Ex. A.  This phrase is and has been used in this

3   manner because it is a generic industry term for water that is actually bottled at its source.  *See*

4   MC Decl., Ex R (12/12/07 Deposition of John Cochran ("Cochran Depo.") at 32:14-20, 33:2-4);

5   Ex. Q (12/13/07 Deposition of Tom Mooney ("Mooney Depo.") at 27:3-9, 28:13-20, 31:13-19,

6   32:20-33:9, 45:5-10, 57:19-25).

7   **B.      Plaintiff's Generic and Descriptive "Bottled At The Source" Mark**

8          Plaintiff asserts that it has been using its mark "bottled at the source" since 1990.  MC

9   Decl., Ex. B; Complaint ¶ 2.  It applied for federal registration of this mark on January 30, 2002.

10  MC Decl., Ex. B.  Registration was initially refused on the basis that the mark was "highly

11  descriptive" of Plaintiff's goods.  *Id*. at Ex. B.  After submitting selective evidence of its sales and

12  use of the phrase, registration was granted on November 4, 2003.  *See* Complaint, Ex. A.  Notably,

13  Plaintiff did not disclose to the USPTO the common use of this mark by others.  Plaintiff currently

14  uses the phrase "bottled at the source" on its products and marketing materials, often directly

15  above its house mark "Crystal Geyser Natural Alpine Spring Water" and an image of a snow-

16  covered alpine mountain range.  *See* MC Decl., Ex. A.

17  **C.      Third Parties' Generic Use of "Bottled At The Source" and "Bottled At Source"**

18         The generic phrase "bottled at the source," is routinely and universally used on third-

19  party's trade dress and marketing materials to describe their bottled water products.  MC Decl. ¶¶

20  4-15, Exs. C through N; Ex Q (Mooney Depo. at 27:3-9, 32:20-33:9).  In the United States alone,

21  scores of bottled water companies have, and still do, prominently and openly use the phrase

22  "bottled at the source" or "bottled at source" on their bottles and marketing materials in a manner

23  similar to both Plaintiff's and Defendants'.  These include, among many others, popular brands

24

---

25  [1] From approximately 1998 through the middle of 2005, the phrase was included on the
    front label of FIJI® water products in small white font.  Campbell Decl., Ex. Q, Mooney Depo.,
26  43:21-44:4.  When an affiliate of Defendants purchased the assets of the company in
    approximately November 2004, it continued to use existing product labels that included the phrase
27  "Bottled At Source" until approximately September 2005 when Defendants introduced redesigned
    product packaging.  *Id.* at 60:7-10.  As part of the redesign, the phrase "Bottled at Source" was
    moved to the back of the product label to create space on the front label for other, more important
28  communication objectives.  *Id.* at 60:19-61:2.

1   such as: "S. Pellegrino," "Hawaiian Springs," "Voss," "Volvic Natural Spring Water,"

2   "Calistoga," "Sole," and "Aquafina."  *Id*., Exs. C, D.   Several brands have been using the phrase

3   for over 50 years.  *Id.* Ex. E.  In addition, the phrase is also widely found in trade publications,

4   advertisements, newspapers, and in other local, national and international media (such as the *N.Y.*

5   *Times*, *San Francisco Chronicle*, *L.A. Times* and *Chicago Tribune*) to describe a type of bottled

6   water.  *Id.* Ex. "I".  These uses have been occurring for decades as part of the common bottled

7   water lexicon, beginning well before Plaintiff's use of the commonly descriptive phrase.  *Id.* at ¶¶

8   4-15.  In 18 years of co-existence with Plaintiff's alleged use, to Defendants' knowledge, these

9   countless other uses have never been challenged by Plaintiff.

10              **III.   LEGAL STANDARD FOR SUMMARY JUDGMENT**

11          Courts must render summary judgment if "there is no genuine issue as to any material fact

12  and [] the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. ("FRCP")

13  56(c).  "[A] moving party without the ultimate burden of persuasion at trial [] may carry its initial

14  burden of production by either of two methods.  The moving party may produce evidence negating

15  an essential element of the nonmoving party's case, or, after suitable discovery, the moving party

16  may show that the nonmoving party does not have enough evidence of an essential element of its

17  claim or defense to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins.*

18  *Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party has properly

19  supported its motion for summary judgment, the burden shifts to the nonmoving party.   If the

20  nonmoving party fails to sufficiently establish the existence of an element essential to the party's

21  case, and on which that party will bear the burden at trial, "the moving party is entitled to a

22  judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

23              **IV.   THE ALLEGED MARK IS NOT PROTECTABLE**

24  **A.    The Phrase "Bottled At The Source" Is Generic And Therefore Not Protectable**

25          Generic or "common descriptive" terms are not entitled to trademark protection.  *See* 15

26  U.S.C. §§ 1052, 1064(c).  Likewise, a registered mark may be canceled at any time on the

27  grounds that it is generic.  *Id.*  "To determine whether a term has become generic, [courts] look to

28  whether consumers understand the word to refer only to a particular producer's goods or whether

5

1   the consumer understands the word to refer to the goods themselves." *KP Permanent Make-Up,*

2   *Inc.,* 408 F.3d 596, 604 (9th Cir. 2005).  If buyers understand the term as being identified with "a

3   particular producer's goods or services, it is not generic."  *Surgicenters of Am., Inc. v. Medical*

4   *Dental Surgeries Co.,* 601 F.2d 1011, 1016 (9th Cir.1979).  "But, if the word is identified with all

5   such goods or services, regardless of their suppliers, it is generic."  *Id.*

6          The Ninth Circuit "has often determined whether a mark is generic using the who-are-

7   you/what-are-you test:  A mark answers the buyer's questions, Who are you? Where do you come

8   from? Who vouches for you? But the generic name of the product answers the question, What are

9   you?"  *Filipino Yellow Pages, Inc. v Asian Journal Publications, Inc.,* 198 F.3d 1143, 1147 (9th

10  Cir. 1999) (internal citations and quotations omitted); *see also Classic Foods Int'l Corp. v. Kettle*

11  *Foods Inc.,* 486 F.Supp.2d 1181, 1188-90 (C.D. Cal. 2007).  Here, Plaintiff's "bottled at the

12  source" mark is and has always been a common descriptive (generic) term for the type of bottled

13  water that is bottled at its source (such as an aquifer in Fiji or an alpine spring).  This is because

14  the phrase "bottled at the source" answers the "what are you?" question, not the "who are you"

15  question.  This is true for not only Crystal Geyser and Fiji Water, but also for scores of other

16  bottled water brands that use the phrase to signify the genus of their bottled water and to describe

17  how it is produced.  *See e.g.* MC Decl., Exs. C, D, G.

18         On summary judgment, genericness of an alleged mark can be demonstrated by evidence

19  of usage by competitors, the media and various other sources.  *See Rudolph Intern. Inc. v. Realys,*

20  *Inc.,* 482 F.3d 1195, 1198-99 (9th Cir. 2007) (granting summary judgment after finding that

21  evidence of usage of a phrase in the industry, in regulations, and in registrations with the USPTO

22  was sufficient evidence of genericness); *Filipino Yellow Pages, Inc.,* 198 F.3d  at 1147 (summary

23  judgment on genericness);  *Self-Realization Fellowship Church v. Ananda Church of Self-*

24  *Realization*, 59 F.3d 902, 910 (9th Cir. 1995) (affirming summary judgment because "self-

25  realization" was generic);  *Classic Foods,* 486 F.Supp.2d at 1188-90 (common usage by the

26  media, public press and competitors of term "kettle" chips made it generic); *Retail Services Inc., v.*

27  *Freebies Publishing*, 364 F.3d 535, 544-46 (4th Cir 2004) (granting summary judgment based on

28  evidence of widespread generic use of a term);  *Schwan's IP, LLC v. Kraft Pizza Co*., 460 F.3d

LA1758372.2
207102-10007
C-07-2258-RMW

6

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES

971 (8th Cir. 2006) (affirming summary judgment on issue of genericness because public had come to understand term "brick oven pizza" to refer to pizza cooked in a brick oven); *Colt Defense LLC v. Bushmaster Firearms Inc.,* 486 F.3d 701, 706-09 (1st Cir. 2007) (granting summary judgment based on evidence of generic competitor and media usage); *Krav Maga Ass'n of America, v. Yanilo*v, 464 F.Supp.2d 981, 987-89 (C.D.Cal.2006) (same).

There is strong and un-rebuttable evidence that the phrase "bottled at the source" is generic. First, "federal courts [] view usage of the term by competitors in the industry as strong evidence of how the public perceives the term." *Classic Foods,* 486 F.Supp.2d at 1190; *see also id.* Evidence of use by competitors in the industry is "probative of generic use because '[t]he more members of the public see a term used by competitors in the field, the less likely they will be to identify the term with one particular producer." *Colt Defense,* 486 F.3d 701, 706 (citing *Classic Foods*). Defendants have identified approximately **25** other bottled waters that use the phrase verbatim, **directly on their bottle**. *See* MC Decl., Ex. C (evidence of brands such as San Pellegrino, Voss, Sole, Calistoga, and approximately 20 others using the phrase on their bottles) (compare with uses by only 4 competitors in *Schwan's* and 15 competitors in *Classic Foods*); *see also* Exs. D,G, H, J; Cochran Decl. ¶ 19. This includes decades of use of the phrase by some very large brands. *Id.*; *see also* MC Decl., Ex. Q (Mooney Depo. at 27:3-9, 32:20-33:9) (Mr. Mooney testifying that "bottled at the source" is a generic phrase that has been used by dozens of brands for decades). In fact, until a recent and widely publicized controversy, even the well-known Aquafina brand used the phrase "bottled at the source" directly on its label. MC Decl., Ex. D.; s*ee also* Defendants' Request for Judicial Notice ¶¶ 1-3. Aquafina constitutes approximately 15% of the United States bottled water market. *Id.* Similarly, in response to a recent cease and desist letter from Plaintiff concerning the use of "bottled at the source," the President and CEO of Nestle Waters, one of the largest bottled water companies in the world, expressed his "surprise" and noted that Nestle's brands had been publicly using the common phrase since the 1920's. MC Decl., Ex. E. As another example, in a 1985 book on bottled water, there is a picture of a Calistoga brand mineral water label, showing the label boldly stating: "BOTTLED AT THE

7

1    SOURCE."  MC Decl., Ex. F.  At the time in 1985, Calistoga was the largest bottled mineral water

2    company in the United States.  *Id.*  Calistoga still uses the phrase on its bottle.  MC Decl., Ex. C.

3         On top of this, there is evidence of over 50 *additional* bottled water companies that also

4    use the phrase "bottled at the source" to describe their products to consumers in websites,

5    advertisements and other marketing and informational materials.  *Id*. ¶ 8, Ex. G (over 50 examples

6    of brands such as Perrier, Jana, etc., using the phrase).  None of these uses of "bottled at the

7    source" ever refer to Plaintiff; they simply describe a variety and characteristic of bottled water.

8         Use in the media also proves that the phrase is generic.  "[F]ederal courts view usage of a

9    particular term in the popular press as strong evidence of how the public perceives that term."

10   *Classic Foods,* 486 F.Supp.2d at 1189; *see also Colt Defense*, 486 F.3d at 706-09.  The phrase

11   "bottled at the source" is regularly used in local, national and international media to describe to the

12   public the type of bottled water that a manufacturer sells.  MC Decl., ¶ 9, Ex. H (over 50 examples

13   of use in the press) (compare to only 37 examples in *Classic Foods*).  Numerous examples of use

14   of "bottled at the source" are found in widely circulated media sources such as the *Chicago*

15   *Tribune, New York Times, L.A. Times, San Francisco Chronicle*, and dozens of others.  *Id*.  In fact,

16   a 2003 Chicago Tribune article noted an industry analyst's comment that certain waters deemed

17   "bottled at the source" could be considered a separate category of bottled water.  *Id.*

18        Other evidence of genericness of this phrase includes:  (1) large national retailers such as

19   Sam's Club and BevMo use "bottled at the source" in advertisements to consumers to give

20   information about their products (MC Decl., Ex. I); (2) numerous companies have trademarked

21   phrases with "bottled at the source" as part of the trademark (some no longer in effect) (*Id*., Ex. J);

22   *Rudolph*, at 1198-99 (USPTO applications were evidence of genericness); (3) even "Wikipedia,"

23   the leading online encyclopedia, uses "bottled at source" to define mineral water (*Id*., Ex. K).

24        Finally, evidence of a plaintiff's own generic use of a phrase, not in the context of a mark,

25   "is strong evidence of genericness."  *Retail Services*, 364 F.3d 535 at 545; *Rudolph Intern.,* 482

26   F.3d at 1198; *Colt Defense,* 486 F.3d 701, 706-07.  Here, Plaintiff often uses "bottled at the

27   source" in a generic manner.  For example: (1) Plaintiff's "FAQ's" to consumers on its website

28   uses the phrase generically to talk about water (MC Decl., Ex. N); (2) Plaintiff's "consumer guide

1    to natural spring water" guides consumers to ask whether water "is bottled at the source" noting

2    factually that their water must be "bottled at the source" (*Id.*); (3) Plaintiff's marketing materials

3    use the phrase generically (*Id.*, Ex. L); and, (4) Plaintiff even uses the phrase a second time in text

4    *on its bottle* in a generic, non-trademark manner (*Id.*, Ex. M).  These uses are all strong evidence

5    of genericness.  *Retail Services*, at 545; *Rudolph,* at 1198; *Colt Defense,* at 706-07.

6        For 18 years, Plaintiff does not appear to have challenged any of the competing brand's

7    use of the phrase.  Nor does Plaintiff appear to have informed the USPTO of any of these many

8    prior uses in its trademark application concerning distinctiveness.  *See* MC Decl., Ex. B.  This is

9    likely because such strong evidence of widespread use of the phrase to identify a type of bottled

10   water would have resulted in the mark not issuing.  *See e.g. Classic Foods,* 486 F.Supp.2d at

11   1188-90 (term "kettle" was generic because it was commonly used to describe the chip production

12   process); *Schwan's*, 460 F.3d 971 (summary judgment that "brick oven pizza" was generic

13   because it is a common phrase used to describe a pizza preparation process).

14        In short, generic use of "bottled at the source" is universal on the local and national level in

15   the United States, and across the world, by small and large brands, retailers, and the media, in the

16   same manner that the parties here use it.  This has been occurring for decades, long before Plaintiff

17   alleges to have started using the phrase.  Based on this undisputed evidence, summary judgment is

18   warranted.  *Rudolph,* 482 F.3d at 1198-99 (granting summary judgment on genericness); *Filipino*

19   *Yellow Pages,* 198 F.3d  at 1147 (same);  *Self-Realization Fellowship Church*, 59 F.3d at

20   910 (same);  *Retail Services Inc.,* 364 F.3d at 544-46 (same);  *Schwan's*, 460 F.3d 971 (same);

21   *Colt Defense.,* 486 F.3d at 706-09 (same); *Krav Maga,* 464 F.Supp.2d at 987-89 (same).

22   **B.**    <u>**Alternatively, The Mark Is Descriptive Without Secondary Meaning**</u>

23        Alternatively, even if it is not generic, Plaintiff's "bottled at the source" mark is descriptive

24   without secondary meaning.  Unmistakably, "bottled at the source" is at best a "descriptive" term.

25   The USPTO even deemed it "highly descriptive."  *See* MC Decl., Ex. B.  A "merely descriptive"

26   mark describes the qualities or characteristics of a good or service; this type of mark may be

27   registered and protected only if the registrant shows that it has acquired secondary meaning, *i.e.,* it

28   "has become distinctive of the applicant's goods in commerce."  *See* 15 U.S.C. §§ 1052(e), (f);

LA1758372.2
207102-10007
C-07-2258-RMW

9

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES

1   *Japan Telecom, Inc. v. Japan Telecom America Inc*., 287 F.3d 866, 873 -875 (9th Cir. 2002).  This

2   requires a showing that there is "a mental recognition in buyers' and potential buyers' minds that

3   products connected with the [mark] are associated with the same source."  *Self-Realization*

4   *Fellowship Church,* 59 F.3d at 911.

5        First, the fact that many other competitors and consumers use the phrase evidences a lack

6   of secondary meaning because it shows a lack of exclusive use.  *See e.g. Classic Foods,*

7   486 F.Supp.2d at 1195; MC Decl., Exs. C through K.  The evidence on genericness discussed in

8   Section IVA above is ample evidence of a lack of secondary meaning.  By this evidence, it is

9   utterly apparent that the broad public views the phrase only as descriptive of a characteristic of

10  water, not unique to any particular brand.

11       Second, Plaintiff has produced no evidence that consumers associate the extremely

12  common phrase "bottled at the source" with Plaintiff or Crystal Geyser.  Neither Plaintiff's

13  responses to document requests, nor its responses to interrogatories, each of which requested

14  evidence and facts supporting its claims of secondary meaning, contained any evidence

15  demonstrating secondary meaning.  *See* MC Decl., Exs. O, P (Plaintiff's responses to

16  interrogatories 9 and 10, and responses to requests for production 16 and 17).

17       To avoid summary judgment, Plaintiff has the burden in discovery to produce any

18  evidence supporting its allegations of secondary meaning and to negate the evidence that this

19  descriptive phrase is associated as a generic characteristic of bottled water, and widely used as

20  such.  *See Nissan Fire*, 210 F.3d at 1102; *Celotex*, 477 U.S. at 323.  Nothing suggests that

21  consumers view this mark as anything other than a common description of geographic bottling

22  origin or that the term is in any way linked in consumers' minds with Plaintiff.  Therefore,

23  summary judgment on the issue of secondary meaning is warranted.  *See Japan Telecom*, 287 F.3d

24  at 873 -875 (affirming grant of summary judgment based on lack of evidence of secondary

25  meaning for descriptive term); *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc*., 198

26  F.3d 1143, 1151 -1152 (9th Cir.1999) (same).[2]

27  _____

28  [2]   A trademark that is generic or descriptive without secondary meaning is invalid and may be
    cancelled.  *See* 15 U.S.C. §§ 1052, 1064(c).  Accordingly, based on the above, because Plaintiff's

## V.     DEFENDANTS' USE OF "BOTTLED AT SOURCE" IS "FAIR USE"

Even if the Court were to find that there is a triable issue of fact as to whether the mark is generic, claims 1, 2, 3, 4 and 5 still fail as a matter of law because any use of the phrase "bottled at the source" by Defendants is a statutorily protected "fair use."  *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 123 (2004) ("fair use can occur along with some degree of confusion").  Trademark law, as embodied in the Lanham Act, recognizes a "fair use" defense – the concept that a trademark registrant cannot "appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods." *New Kids on the Block v. News America Pub., Inc.,* 971 F.2d 302, 306 (9th Cir. 1992) (*quoting Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1185 (5th Cir.1980) (stating that courts will hold as a matter of law that the original producer does not sponsor or endorse another product that uses his mark in a descriptive manner).

The fair use defense, as codified at 15 U.S.C. § 1115(b)(4), provides an absolute defense to an infringement claim if "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, . . . of a term of device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." 15 U.S.C. § 1115(b)(4); *see also* 15 U.S.C. § 1125(c)(3).  To establish a fair use defense here, a defendant must show the following:  "1. Defendant's use of the term is not as a trademark or service mark; 2. Defendant uses the term 'fairly and in good faith'; and 3. [Defendant uses the term] '[o]nly to describe' its goods or services."  Trademarks and Unfair Competition. at § 11:49 (quoting 15 U.S.C. § 1115(b)).  In certain cases, such as this one, this determination can be made as a matter of law at a preliminary stage of the case.  *See In re Dual-Deck Video Cassette Recorder Antitrust Litigation, Go-Video, Inc. v. Matsushita Electrical Industrial Co., Ltd*., 11 F.3d 1460 (9th Cir. 1993);  *In re Dual-Deck Video Cassette Recorder Antitrust Litigation v. Matsushita Electrical Industrial Co., Ltd*., 1991 WL 425379. *13 (D.Ariz.1991) (finding that the defendants' use did "not suggest that the term identifies the product, and it creates virtually no

trademark is both generic and without secondary meaning, there is no triable issue of fact, and summary judgment as to Defendants' counterclaim for trademark cancellation is also appropriate.

possibility of confusion with plaintiff's product")[3].

Here, the un-contradicted evidence establishes as a matter of law that Defendants' use of Plaintiff's mark is a permissible fair use.  First, Defendants' use of the phrase "bottled at source" is not in the sense of a mark, but is instead used discretely on the back label of the product and otherwise as an accurate factual description of where and how Defendants' product is bottled.  *See* Cochran Decl., ¶¶ 11, 14-17;  MC Decl., Ex. R (Cochran Depo. 29:1-3, 32:14-20, 33:2-4, 44:15-18, 45:10-14, 46:16-18); MC Decl., Ex. Q (Mooney Depo. 28:13-17, 31:4-25, 45:5-10).  Description of geographic origin is routinely considered a permissible fair use.  *See, e.g., Schafer Co. v. Innco Management Corp.*, 797 F. Supp. 477 (E.D.N.C. 1992); *see also* McCarthy on Trademarks and Unfair Competition § 14:17 (4th ed. 2007) ("a junior user can use another's registered trademark so long as it is in a non-trademark, geographical sense")

Second, Defendants' use is in good faith.  In examining good faith, courts generally evaluate the use of the mark itself, not the user's state of mind.  *See In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 1991 WL 425379 at *13.  Here, Defendants fairly use "bottled at the source" as a factually descriptive phrase next to their far more prominently displayed house mark.  *See* Cochran Decl., ¶¶ 14-16 (phrase is used merely to describe a fact); *see Schmid Laboratories v. Youngs Drug Products Corp.*, 482 F.Supp. 14, 21 (D.C.N.J. 1979) (summary judgment granted based on fair use defense because use of mark was in ordinary sense, and no wrongful intent could be inferred from defendant's adoption of this term since not used as means of fostering identification of that word with defendant's company as the source of origin).

Use of the term by others in the industry is also evidence of a lack of bad faith.  *See id.* at 19 ("widespread use of the term [] within the business diminishes the likelihood that defendant adopted it so as to take advantage of any goodwill already created by plaintiff").  In this case, Defendants have identified approximately 75 other bottled waters and/or brands, and many

---

[3] A common law fair use defense incorporates the statutory elements of the Lanham Act, so that where a defendant's use is a fair use against an assertion of a registered trademark, then it is also fair use as against a state statutory or common law count. *See* 1 *J. McCarthy, Trademarks and Unfair Competition*, § 11.49, at 93-94 (1999) (citing *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir.1984)); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 789 (5th Cir.1983)).

LA1758372.2
207102-10007
C-07-2258-RMW

12

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES

1  additional third-party sources, who also use the generic phrase to describe a characteristic of

2  different bottled water products.  *See* MC Decl., Exs. C through J.

3       Based on all of the above, summary judgment in favor of Defendants should be granted on

4  the basis of "fair use" as well.

5  **VI.    PLAINTIFF'S FEDERAL AND STATE TRADEMARK AND UNFAIR**

6  **COMPETITION CLAIMS (1, 2, 3, 4, AND 5) FAIL AS A MATTER OF LAW**

7       Claims 1, 2, 3, 4, and 5 of Plaintiff's Complaint set forth federal and state trademark

8  infringement, dilution and unfair competition claims, based on the allegation that Defendants' use

9  of the phrase "bottled at source" or "bottled at the source" to describe where their product is

10  bottled is confusingly similar to Plaintiff's mark.  Specifically, the Complaint sets forth the

11  following claims:  (1) Claim 1 for federal trademark infringement;  (2) Claim 2 for federal unfair

12  competition and false designation of origin; (3) Claim 3 for dilution under federal law (4) Claim 4

13  for dilution and trademark infringement under California law; and, (5) Claim 5 for unfair

14  competition under California law.

15       Each of these claims requires essentially the same legal analysis.  To establish its federal

16  trademark infringement claim, the burden is on Plaintiff to prove by a preponderance of the

17  evidence that:  (1) its mark is valid; (2) it is the senior mark; and (3) the defendant's mark is likely

18  to cause confusion in the marketplace.  *Conversive, Inc. v. Conversagent, Inc.*, 433 F.Supp.2d

19  1079, 1087 (C.D. Cal. 2006) (citing *Brookfield Communications, Inc. v. West Coast Entertainment*

20  *Corp.,* 174 F.3d 1036, 1046 (9th Cir.1999)).  Similarly, to state a false designation of origin and

21  unfair competition claim under federal law (Claim 2), Plaintiff must prove (1) that validity of the

22  mark and (2) likelihood of confusion as to the origin of Defendants' goods or services.  *Levi*

23  *Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354 (9th Cir.1985).  The same analysis applies to

24  Plaintiff's state trademark and unfair competition claims.  *See, e.g., M2 Software, Inc. v. Madacy*

25  *Entm't*, 421 F.3d 1073, 1080 (9th Cir. 2005); *Cleary v. News Corp*., 30 F.3d 1255, 1262-63 (9th

26  Cir.1994).  Therefore, each of these causes of action rely on Plaintiff establishing evidence of a

27  valid mark and customer confusion.

28

LA1758372.2
207102-10007
C-07-2258-RMW

13

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES

1    **A.    Plaintiff Cannot Establish Confusion**

2         The uncontroverted evidence shows that there is no likelihood that a reasonable consumer

3    would be confused about the source of the parties products based on use of the descriptive phrase

4    "bottled at source" or "bottled at the source" to describe where the product is bottled.  A likelihood

5    of confusion exists when a consumer viewing a mark is likely to make a purchase under a

6    mistaken belief that goods or services are, or are associated with, those of another provider.  *See,*

7    *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir. 1987).  The confusion must

8    "be probable, not simply a possibility." *Id.*  Courts in the Ninth Circuit analyze eight factors to

9    assess the question of likelihood of confusion:  (1) strength of the mark; (2) similarity of the

10   trademarks; (3) relatedness of the goods; (4) defendant's intent in selecting the mark; (5) evidence

11   of actual confusion; (6) marketing channels used; (7) likelihood of expansion of product lines; and

12   (8) degree of care consumers are likely to exercise.  *AMF, Inc. v. Sleekcraft Boats*, 559 F.2d 341,

13   348-49 (9th Cir. 1979).  "[T]his eight-factor test . . . is pliant.  Some factors are much more

14   important than others, and the relative importance of each individual factor will be case-specific."

15   *Brookfield*, 174 F.3d at 1054.  This Court may determine likelihood of confusion as a matter of

16   law on a motion for summary judgment.  *See, e.g., Surfvivor Media, Inc. v. Survivor Productions*,

17   406 F. 3d 625, 634 (9th Cir. 2005).

18                    **1.    Plaintiff's mark is weak.**

19        As discussed extensively above, Plaintiff's "bottled at the source" mark is an extremely

20   common term widely used to connote a genus of bottled water that is bottled at its source (such as

21   an aquifer in Fiji or an alpine spring) as opposed to bottled water that comes from a tap.  *See* MC

22   Decl., Ex. Q (Mooney Depo. at 27:3-9, 28:13-20, 31:13-19, 32:20-33:9, 45:5-10, 57:19-25); MC

23   Decl., Exs. C through K (mark is widely used).  Rather than being fanciful, or created simply to

24   identify Crystal Geyser water, the phrase generically describes the source of origin and bottling of

25   various products without requiring any exercise of the imagination.  *See Kendall-Jackson Winery*

26   *v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998).  Such marks are the weakest and

27   generally not protectable.  In addition, because it is widely used by others, this generic and

28   descriptive mark is a very weak trademark entitled to rare protection, if any.  *See e.g. White Swan,*

1    *Ltd. v. The Nature Company*, 1993 WL 216133, *4 (D. Or. 1993); *Star Markets, Ltd. v. Texaco,*

2    *Inc.,* No. Civ. 95-01018 BMK, 1996 WL 780472, at *5 (D. Haw. Dec. 11, 1996); *Frehling Enter.,*

3    *Inc. v. International Select GrP., Inc.,* 192 F.3d 1330, 1336 (11th Cir. 1999) (holding that

4    "important in gauging the strength of a mark is the degree to which third parties make use of the

5    mark"); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 581 (2d Cir. 1991) (holding that

6    "extensive third party use weighs against a finding that the mark is strong").  Therefore, the first

7    *Sleekcraft* factor falls heavily in favor of Defendants.

8            **2.**       **Examined in context, the marks are dissimilar.**

9         In determining the similarity of the marks, courts may examine factors such as the

10   packaging, display, and promotional materials associated with both the trademark holder and the

11   alleged infringer's products to determine if they would appear similar to a reasonable consumer.

12   *See Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1244 (9th Cir.1984).  In this case, a

13   simple visual comparison of Plaintiff's use of its "bottled at the source" mark compared to

14   Defendants' use of the phrase establishes conclusively that the products are entirely dissimilar in

15   appearance and readily distinguishable.  *See* MC Decl., Ex. A; *see also Lindy Pen Co.,* 725 F.2d at

16   1245 ("[t]he two marks viewed in isolation are indeed identical, but their similarity must be

17   considered in light of the way the marks are encountered in the marketplace and the circumstances

18   surrounding the purchase of the [products]").

19        In this case, Plaintiff uses the phrase on the front of a cylindrical bottle in white font on a

20   red background above the trade name "Crystal Geyser Alpine Spring Water" and an image of

21   snow-covered mountains.  *See* MC Decl., Ex. A.  In contrast, Defendants use the phrase on the

22   back of a stout, square bottle in small white font on a light blue background next to or near the

23   trade name FIJI® and an image of tropical foliage.  *Id.*  This clear visual dissimilarity between the

24   parties' products alone is enough for the Court to find that there is no likelihood of confusion as a

25   matter of law.  *See Nabisco, Inc. v. Warner-Lambert Co.,* 220 F.3d 43, 46 (2d Cir.2000) (internal

26   quotation marks omitted) (factor focusing on "similarity of the marks" can be "dispositive and will

27   warrant summary judgment" for the defendant "if the court is satisfied ... that the marks are so

28   dissimilar that no question of fact is presented").

LA1758372.2
207102-10007
C-07-2258-RMW

15

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES

Most importantly, the use of the phrase in conjunction with the parties' house mark makes the actual marks appear highly dissimilar and negates the likelihood of confusion. The evidence shows that the parties both only use the phrase "bottled at the source" accompanied by the parties' far more prominently displayed house trademark names, Crystal Geyser® and FIJI® respectively. *See* MC Decl., Ex A. Where the allegedly offending phrase is included on the back of Defendants' product labels, it is: (1) directly under a reference to Defendants' "fijiwater.com" website and house mark FIJI® as well as an image of Defendant's trade dress incorporating the FIJI® name; (2) above the relevant disclosure of the source of the product stating: "Source: Yaqara, Viti Levu, Fiji Islands;" and (3) generally in a font much smaller and lighter in contrast than the rest of the text on the label. *Id.*; *See* Complaint Ex. B. This is also true of Defendants' use of the phrase on other marketing materials and its website, where it is generally used in descriptive text to describe Defendants' bottling process. *See* Cochran Decl., A-C  It is well settled that such use of a house mark may eliminate a likelihood of consumer confusion. *See Lindy Pen* at 1245 n.4 (use of prominent house mark may negate confusion); *Sleekcraft*, 599 F.2d 341; *Playtex Products, Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 164 -165 (2d Cir. 2004) (listing cases); *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.2d 43, 55 (2d Cir. 2000) ("prominent use of its well-known house brand ... significantly reduces, if not altogether eliminates, the likelihood that consumers will be confused as to the source of the parties' products"); *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 269 F.3d 114, 123 (2d Cir. 2001) ("[b]ased on the record before us, we find that the presence of the prominent and distinctive labels alone negates any possibility of a likelihood of confusion ...."); *American 23Rolex Watch Corp. v. Ricoh Time Corp.*, 491 F.2d 877 (2d Cir. 1974) (defendant's house mark prevents confusion); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,* 973 F.2d 1033, 1045-46 (2d Cir.1992) (finding no confusing similarity between "Excedrin PM" and "Tylenol PM" and noting that "the prominence of the trade names on the two packages weighs heavily against a finding of consumer confusion"); *Pristine Industries, Inc. v. Hallmark Cards, Inc.*, 753 F. Supp. 140 (S.D.N.Y. 1990) (defendant's use of house mark in connection with disputed mark was strong indicator of no likely confusion).

LA1758372.2
207102-10007
C-07-2258-RMW

16

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES

1    Finally, Defendants use the phrase on the back of their product, which clearly indicates that

2  it is not the main indicator of the product's identity. *See In re Dual-Deck*, 11 F.3d at 1466-67 (9th

3  Cir. 1993).

4    This factor conclusively favors Defendants. The evidence of the dissimilarity of the

5  products, coupled with the parties' routine and prominent use of their house marks along with the

6  phrase, makes clear that there is no *possible*, let alone *probable*, consumer confusion. *See Alpha*

7  *Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.,* 616 F.2d 440, 444 (9th Cir. 1980) (affirming

8  finding of dissimilarity where marks used differently and one use included distinctive logo

9  indicating a different origin); *see Nabisco,* 220 F.3d at 46 (this factor can be conclusive if

10 dissimilarity of marks alone shows there could be no likelihood of confusion).

11         **3.      Relatedness of the goods.**

12    Here, it is true that the parties both sell bottled water. However, given the dissimilar

13 packaging of the products, including the house marks prominently displayed alongside the phrase

14 "bottled at the source," and the clearly differentiated geographic origin of the water and bottling,

15 no reasonable consumer could conclude that the products are associated with the same "source" –

16 geographic or otherwise. As such, this factor does not favor a finding of confusion. *See Surfvivor*,

17 406 F.3d at 633 (the standard for deciding whether the parties' goods are "related" is whether

18 consumers are "likely to associate" the two product lines, or whether "the buying public could

19 reasonably conclude that the products came from the same source").

20         **4.      Defendants' intent.**

21    Defendants have produced evidence that the phrase "bottled at the source" on their

22 products is and always has been used only to accurately explain to the public that their products

23 are actually bottled at the source in Fiji. *See* MC Decl., Ex. R (Cochran Depo. 29:1-3, 32:14-20,

24 33:2-4, 44:15-18, 45:10-14, 46:16-18); Ex. Q (Mooney Depo. 28:13-20, 31:4-25, 45:5-10, 57:19-

25 25); Cochran Decl. ¶¶ 15-17. Defendants do not use the phrase in the trademark sense, but instead

26 use it discretely as text on the back of their product labels and in answers to FAQs on their

27 website. Cochran Decl. ¶¶ 11-15. Defendants had no intent to, and never considered, copying or

28

LA1758372.2
207102-10007
C-07-2258-RMW

17

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES

1  mimicking Plaintiff's use of this generic phrase.  *Id.*  Defendants use this phrase in good faith for

2  the purpose of conveying a fact alone.  *Id.*  There is no disputable evidence on this issue.

3              **5.    Plaintiff cannot meet its burden of showing actual confusion.**

4        After over 10 years of co-existence of Plaintiff's and Defendants' products, and despite

5  multiple discovery requests seeking such information, Plaintiff still has no evidence of actual

6  confusion, such as misdirected consumer complaints or inquiries or survey evidence.  *See Levi*

7  *Strauss*, 778 F.2d at 1360 (evidence from mistaken consumers or experts is common evidence of

8  this factor); MC Decl. Exs. O, P (responses to interrogatories 7, 8; requests for production 13-15).

9  Plaintiff's lack of third party evidence of confusion may be properly viewed as a lack of evidence

10  of any confusion at all.  *Self-Insurance Institute of Am. v. Software and Info. Indus. Ass'n*, 208 F.

11  Supp. 2d 1058, 1075 (C.D. Cal. 2000) (summary judgment granted in part due to lack of evidence

12  of confusion);  *see Star Markets, Ltd. v. Texaco*, 1996 WL 780472 (D. Haw. 1996), at *6 (holding

13  that where the plaintiff "failed to produce any evidence whatsoever of actual confusion . . . this

14  factor overwhelmingly favors" the defendant).

15              **6.    Marketing channels.**

16        Defendants admit that their bottled water product is often marketed through channels of

17  distribution that are similar to Plaintiff's, such as retail stores.  However, based on factors such as

18  pricing and the target audience of advertising, Defendants do not generally consider Plaintiff to be

19  their direct competitor in the marketplace.  Cochran Decl. ¶ 6; *see also* MC Decl., Ex.Q (Mooney

20  Depo. 26:16-17); Ex. R (Cochran Depo., 35:3-5).

21              **7.    Defendants' use does not hinder any expansion plans.**

22        In examining this factor, courts look to whether the existence of the allegedly infringing

23  mark is hindering a plaintiff's expansion plans.  *See Surfvivor*, 406 F.3d at 634.  In this case, the

24  factor is irrelevant because the parties already have already generally expanded to similar bottled

25  water markets.  Most importantly, Plaintiff has not and can not establish that Defendants' fair use

26  of the descriptive phrase "bottled at the source" is in any way hindering it or damaging any alleged

27  expansion plans.  Indeed, Plaintiff's only evidence of an "expansion plan" is its Response to

28  Defendants Interrogatory No. 18 where it states that "Plaintiff [sic] plans for future expansion

LA1758372.2
207102-10007
C-07-2258-RMW

18

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES

1    involve continued distribution and gain of the market share throughout the United States as well as

2    increased distribution to the Asian market."  MC Decl., Ex. P.  This is entirely speculative, only

3    concerns market share, not expansion, and is not enough to demonstrate evidence of actual

4    expansion.  *See Surfvivor,* 406 F.3d at 634.  As such, this factor also falls in favor of Defendants.

5                    **8.      Consumers' relatively high degree of care in the purchase of bottled**

6                             **water products.**

7            Despite the relatively inexpensive price of bottled water, today's consumers exercise some

8    care in the purchase of bottled water products such as Defendants' product.  First, Defendants'

9    FIJI® water product is a "premium" bottled water product with a higher price point than most

10   other bottled water products, including Plaintiff's "Crystal Geyser" brand water.  Cochran Decl., ¶

11   6.  Further, purchasers of bottled water tend to be health-conscious and purchase the product based

12   on what they believe to be its health attributes, and therefore are likely to exercise a higher degree

13   of care than they might otherwise exhibit for low cost goods.  *Id.*; *see Eniva Corp. v. Global Water*

14   *Solutions, Inc.*, 440 F.Supp.2d 1042, 1052 (D.Minn. 2006) (relatively high costs of parties' bottled

15   water products and care used by consumers in niche wellness market indicated consumers used

16   high degree of care in purchases).  As such, the final *Sleekcraft* factor also favors Defendants.

17                                      *        *        *

18           Based on an overall analysis of the facts and evidence, there is no genuine issue of fact as

19   to likelihood of confusion.  Plaintiff has put forth no evidence proving otherwise.  The Court is

20   therefore well within its power to find no likelihood of consumer confusion as a matter of law, and

21   to grant Defendants' motion for summary judgment of Plaintiff's federal and state trademark and

22   related claims (Claims 1, 2, 3, 4, and 5).

23   **B.     There is No Evidence to Support Plaintiff's Claims 3 and 4 for Trademark Dilution**

24           In order to establish a violation of the Federal Trademark Dilution Act, a plaintiff must

25   prove that:  (1) the mark is famous; (2) the defendant is making a commercial use of the mark in

26   commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's

27   use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify

28   and distinguish goods and services.  *Panavision Intern., L.P. v. Toeppen,* 141 F.3d 1316, 1324

1   (9th Cir. 1998). The Ninth Circuit has held that state and federal trademark dilution claims require

2   essentially the same analysis and therefore these claims should be considered together. *See*

3   *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998); *Avery Dennison Corp.*

4   *v. Sumpton*, 189 F.3d 868, 874 (9th Cir. 1999).

5        Most clearly, Plaintiff cannot show that its "bottled at the source" mark is famous as that

6   term is defined for purposes of a dilution analysis, let alone that Defendants' use of the mark

7   began after the mark became famous. The Ninth Circuit has stressed that:

> 8   [F]ame in the dilution context must be very narrow: 'Dilution is a cause of action
>     invented and reserved for a select class of marks-those marks with such powerful
> 9   consumer associations that even non-competing uses can impinge their value.' As a
>     result, 'to meet the famousness element of protection under the dilution statutes a
> 10   mark must be truly prominent and renowned.

11   *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 907-908 (9th Cir. 2002) (internal

12   quotations omitted). The Ninth Circuit has also approvingly cited cases holding that a "famous"

13   mark for dilution purposes "must be a household name" as it is associated with the mark-holder.

14   *Id.* at 911.

15        First, Plaintiff has failed to produce any evidence of famousness or dilution. Although

16   asked to identify all documents and facts supporting the famousness and dilution, aside from brief,

17   conclusory statements with no evidentiary value, Plaintiff's discovery responses failed to produce

18   or identify one shred of evidence supporting its claims of famousness and dilution. MC Decl., Ex.

19   O (responses to interrogatories 9 and 11); Ex. P (requests for production 16, 17 and 18).

20        Second, the term "bottled at the source" is a generic and descriptive term commonly used

21   by the public at large to describe where a given product came from. *See* MC Decl., Exs. C

22   through N. Such use by third parties – especially because it is so prevalent – evidences the fact

23   that the mark is not famous. *Thane Intern., Inc.,* 305 F.3d at 912 (use of the same or similar marks

24   by third parties "strongly suggests that [a mark] is not famous").

25        Finally, as discussed above, the lack of secondary meaning and the lack of consumer

26   confusion both suggest there is no dilution or effect on Plaintiff's mark by Defendant's use. How

27   can a company's mark be famous, and renowned – and then diluted – if there is no public

28   association with the company, and it is generically used by an entire industry? In fact, nothing

LA1758372.2
207102-10007
C-07-2258-RMW

20

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES

about the phrase "bottled at the source" is a "household name" ever associated with Plaintiff. Failure to produce evidence of fame or dilution is grounds for granting summary judgment on both Plaintiff's dilution claims (claims 3 and 4).  *See, e.g., Thane Intern., Inc.,* 305 F.3d at 912.

## VII.   PLAINTIFF'S INJURY TO BUSINESS REPUTATION CLAIM (CLAIM 6) HAS NO BASIS IN LAW OR FACT

Plaintiff has alleged as its sixth cause of action the tort of "common law injury to business reputation."  In California, injury to business reputation is not a tort, it is a measure of damages when tort liability has been established.  *See e.g. Bertero v. National General Corp.* 13 Cal.3d 43, 59-61, 64 (1974); *Weller v. American Broadcasting Companies, Inc.* 232 Cal.App.3d 991, 1012, 283 (1991) (measure of damages for defamation); *Restatement of Torts* § 746 (noting that injury to reputation is a measure of damages).  Furthermore, the claim appears to be the same as Plaintiff's non-viable trademark and dilution claims and is based on statutes that have been repealed.  *See* former Cal. Bus. Prof. Code § 14320 *et. seq.*  As discussed throughout, no liability has been, or can be, established for trademark infringement or dilution.  Finally, and most clearly, there is simply no evidence of any injury to Plaintiff, reputational or otherwise.  MC Decl., Exs. O, P (response to interrogatory 13, request for production 20, Plaintiff unable to demonstrate evidence of injury).

## VIII.   PLAINTIFF'S CONVERSION CLAIM (CLAIM 7) FAILS

The basic elements of the tort of conversion are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights by a wrongful act; and (3) resulting damages. *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066, 80 (1998).  Conversion claims are generally not allowed for intangible property. *Thrifty-Tel, Inc. v. Bezenek* 46 Cal.App.4th 1559, 1565 (1996). This Court should follow the reasoning of *Meeker v. Meeker*, 2004 WL 2554452, *5-6 (N.D.Cal. 2004), a well-reasoned case from this district holding that no cause of action for conversion of a trademark exists, and therefore allowing a plaintiff to even plead this cause of action would be an "exercise in futility" (also finding that "a claim for conversion should not be extended to reach the intangible intellectual property rights in a trademark") *Id*. at *6.  In *dicta*, Judge White stated that

LA1758372.2
207102-10007
C-07-2258-RMW

21

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES

1   even if a claim of conversion of a trademark could exist, the claim would fail where there was no

2   allegation that the trademark owner was prevented from use of the mark or that the mark was

3   wrongfully "wrestled" from the owner by trickery or deceit.  *Id.*  For the same reasons as in

4   *Meeker*, Plaintiff's claim for conversion fails as a matter of law.

5        Several other reasons support summary judgment on this claim.  *First*, the fact that

6   Plaintiff's trademark is invalid, generic, and non protected, and that Defendants' use is "fair use"

7   all mean that there was no taking, "wrongful" or otherwise, of any property that Plaintiff has legal

8   dominion over.  *See Burlesci* at 1066, 1080.  *Second*, the uncontroverted evidence shows that

9   Plaintiff has not suffered any damages—a necessary element of the claim.  *Id.*  MC Decl., Ex. O

10  (response to interrogatory 13).

11       **IX.   PLAINTIFF'S INTERFERENCE CLAIMS (CLAIMS 8 AND 9)**

12            **FAIL AS A MATTER OF LAW**

13       Plaintiff's complaint also attempts to shoehorn its trademark and related claims into claims

14  for negligent and intentional interference with prospective economic advantage.  These torts

15  require Plaintiff to prove:  (1) an economic relationship between plaintiff and a third party with

16  probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship;

17  (3) intentional /negligent acts by defendant designed to disrupt that relationship; (4) actual

18  disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by

19  defendant's acts.  *Youst v. Longo,* 43 Cal.3d 64, 71 n. 6 (1987).  Additionally, Plaintiff must put

20  forth evidence that the defendant "engaged in conduct that was wrongful by some legal measure

21  other then the fact of interference itself."  *Della Pena v. Toyota Motor Sales, U.S.A., Inc.,* 11

22  Cal.4th 376, 393 (1995).

23       Again, Plaintiff has been unable to provide any shred of evidence of interference or

24  disruption of a relationship.  MC Decl., Ex. O (response to interrogatory 12).  The undisputed

25  evidence establishes that Defendants did not know of any specific economic relationship between

26  Plaintiff and any third party that had a probability of future economic benefit to Plaintiff, and did

27  not disrupt any such relationship.  *See* Cochran Decl., ¶ 18.

28

LA1758372.2
207102-10007
C-07-2258-RMW

22

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES

Moreover, these torts apply only to "interference with *existing* noncontractual relations which hold the promise of future economic advantage." *Google Inc. v. American Blind & Wallpaper Factory, Inc.,* 2005 WL 832398, *8-9 (N.D.Cal. 2005). In *Google*, the court found that an allegation of relationships with "repeat customers," and an expectation of "future and prospective sales" to these customers, was too speculative to support an interference claim because it "does not rise to the level of the requisite *'promise* of future economic advantage.'" *Id*. at *9 (emphasis in original); *see also Jones v. Deja Vu, Inc*., 2005 WL 1629941, *2 (N.D.Cal. 2005). Similarly here, Plaintiff has not and cannot present evidence any disruption of expected sales to any specified future customers caused by Defendants' use of the "bottled at the source" phrase; evidence relating to existing or repeat customers is insufficient. *Id.*

The interference causes of action fail for the additional reason that they rely on the predicate trademark and related claims which, as shown above, are subject to summary judgment. Defendants' fair use of the generic and non-confusing phrase is permissible and in no way wrongful. Without the trademark claims, Plaintiff has not and can not prove any wrongful conduct. *See Della Pena v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal.4th 376, 393 (1995). Finally, there is also no evidence of the final element, injury incurred by Plaintiff. MC Decl., Ex. O (response to Interrogatory 13, failing to produce any evidence of injury).

## X. PLAINTIFF'S FALSE ADVERTISING CLAIM (CLAIM 10) FAILS BECAUSE DEFENDANTS' STATEMENT THAT THEIR PRODUCT IS "BOTTLED AT SOURCE" IS NOT FALSE OR MISLEADING

Plaintiff's tenth claim, for false advertising under state and federal law, alleges that Defendants' use of the generic and/or descriptive term "bottled at the source" on its products is "false" solely because Defendants' products are not associated with Plaintiff's product or authorized to be sold under Plaintiff's trademark. *See* Complaint ¶ 67-68. Even if true, which it is not, this is not the sort of "falsity" the Lanham Act and California Business and Professions Code § 17500 protect against. A claim for false advertising requires: (1) a false statement of fact in a commercial advertisement; (2) evidence that the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception must be material; (4) evidence

LA1758372.2
207102-10007
C-07-2258-RMW

23

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES

1   the defendant caused the statement to enter interstate commerce; and (5) proof of injury incurred

2   by the plaintiff.  *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir. 1997);

3   Cal. Bus. Prof. Code § 17500.  In *Walker & Zanger, Inc. v. Paragon Industries, Inc.,* 2007 WL

4   1302980 (N.D.Cal. 2006), a court in this district examined what is required for a showing of false

5   advertising when it was asked to find false advertising under federal and California law on the

6   basis of an alleged trade dress infringement.  The court stated that:

7   > Because defendant's advertisements are not false on their face, plaintiff alleges that
8   > the mere subject matter of the advertisement - defendant's similar tiles - is enough
    > to constitute false advertising. Under this interpretation of section 43(a), trade dress
9   > violations would ipso facto constitute false advertising. Plaintiff has not identified,
    > and the court has not found, a case in which the truthful promotion of a product
10  > whose design violates another's trade dress has given rise to a false advertising
    > claim.

11  The same reasoning applies to this case.  It is undisputed that Defendants' water is "bottled

12  at source."  Cochran Decl., ¶¶ 4, 11;  MC Decl., Ex. R (Cochran Depo. 33:2-4); Ex. Q (Mooney

13  Depo. 28:13-17).  There is simply no actionable false statement.  If Defendants' true descriptive

14  statement about the origin of their product, not even alleged to be false or misleading as to the

15  contents of the statement itself, could be actionable as false advertising merely on the basis of

16  some possible customer confusion, then all alleged trademark infringement would always give rise

17  to a claim for false advertising.  Neither federal nor California law contemplate this result.

18              **XI.     THERE IS NO ALLEGATION OR EVIDENCE OF ANY**

19                  **NEGLIGENT OR INTENTIONAL MISREPRESENTATION**

20                  **BY DEFENDANTS TO PLAINTIFF (CLAIMS 11, 12)**

21          The elements of a negligent misrepresentation claim include:  misrepresentation of a past

22  or existing material fact, without reasonable ground for believing it to be true, and/or with intent to

23  induce another's reliance on the fact misrepresented; ignorance of the truth and justifiable reliance

24  on the misrepresentation by the party to whom it was directed; and, resulting damage.  *Shamsian*

25  *v. Atlantic Richfield Co.,*107 Cal. App. 4th 967, 983 (2003).  The elements for intentional

26  misrepresentation are similar, with the addition an intent to deceive.  *See* Cal.Civ.Code § 1709.

27          Here, Plaintiff alleges that Defendants misrepresented to the public that they were

28  associated with Plaintiff by their use of the phrase "bottled at the source."  However, there is no

LA1758372.2
207102-10007
C-07-2258-RMW
                    24                    DEFENDANTS' MOTION FOR SUMMARY
                                          JUDGMENT; MEMORANDUM OF POINTS
                                          AND AUTHORITIES

1    allegation or evidence that Defendants' statement that their product is "bottled at the source" in

2    Yaqara, Fiji is in any way a misrepresentation.  The undisputed evidence establishes that it is a

3    true fact.  Cochran Decl., ¶¶ 4, 11;  MC Decl., Ex. R (Cochran Depo. 33:2-4); MC Decl., Ex. Q

4    (Mooney Depo. 28:13-17).  The allegation that Defendants' represented on their bottle that they

5    are associated with Plaintiff can be dispelled simply by looking at the bottle which contains no

6    such statement.  *See* MC Decl., Ex. A.

7         Second, Plaintiff cannot base its claim on a statement made to a third party, here,

8    consumers.  *See e.g. Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1337 (N.D.Cal.1991)

9    ("only those people for whom the representation was intended may recover damages on a

10   negligent misrepresentation theory"); *Security Officers Service, Inc. v. State Compensation Ins.*

11   *Fund*, 17 Cal.App.4th 887, 899 (1993).  Therefore, Plaintiff lacks standing to assert these claims

12   on behalf of the general public.  *Id.*

13        Finally, Plaintiff also cannot produce any evidence to support the other elements of this

14   claim:  evidence of fraud (no response to interrogatory 14); evidence of damages suffered due to

15   the fraud (no response to interrogatory 13); and, there is no evidence to contradict the fact that

16   Defendants did not act with any intent to deceive. *See* MC Decl., Ex O (responses to

17   interrogatories); Cochran Decl. 15-18 (Defendants did not intend to deceive).  Plaintiff cannot

18   establish all of the elements of this claim and, therefore, summary judgment is warranted.

19                          **XII.   CONCLUSION**

20        For the foregoing reasons, Defendants respectfully request that the Court grant its Motion

21   for Summary Judgment in their favor on each of Plaintiff's causes of action, as well as on

22   Defendants' Counterclaim for trademark cancellation.

23

24   Dated:  April 25, 2008                    LOEB & LOEB LLP
                                               MARK D. CAMPBELL
25                                             WILLIAM M. BRODY

26

27                                             By: /s/ Mark D. Campbell
                                               MARK D. CAMPBELL
28                                             Attorneys for all Defendants

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; MEMORANDUM OF POINTS
AND AUTHORITIES