1   Mark D. Campbell (SBN 180528)
    mcampbell@loeb.com
2   William M. Brody (SBN 229901)
    wbrody@loeb.com
3   LOEB & LOEB LLP
    10100 Santa Monica Boulevard, Suite 2200
4   Los Angeles, California 90067-4120
    Telephone:    310-282-2000
5   Facsimile:    310-282-2200

6   ANDREW E. ASCH (SBN 198857)
    aasch@roll.com
7   SARAH C. ABBOTT (SBN 231863)
    sabbott@roll.com
8   ROLL INTERNATIONAL CORPORATION-LEGAL DEPT.
    11444 West Olympic Boulevard, 10th Floor
9   Los Angeles, California 90064-1557
    Telephone:    310-966-5700
10  Facsimile:    310-966-5758

11  Attorneys for Defendants
    FIJI WATER COMPANY LLC, FIJI
12  WATER COMPANY HOLDINGS LLC, and
    PARAMOUNT INTERNATIONAL
13  EXPORT LTD.

14

15                  UNITED STATES DISTRICT COURT

16                NORTHERN DISTRICT OF CALIFORNIA

17                      SAN JOSE DIVISION

18  CG ROXANE LLC, a California limited        )   Case No.  C-07-2258-RMW
    liability company,                         )
19                                             )   **DEFENDANTS' REPLY IN
                                               )   SUPPORT OF THEIR
20               Plaintiff,                     )   MOTION FOR SUMMARY JUDGMENT**
                                               )
21           v.                                )   [F.R.C.P. 56; Local Rule 56-1, 56-2]
                                               )
22  FIJI WATER COMPANY LLC, a Delaware         )
    limited liability company; FIJI WATER      )   Date:      June 6, 2008
23  COMPANY HOLDINGS LLC, a Delaware           )   Time:      9:00 a.m.
    liability company; PARAMOUNT               )   Judge:     Hon. Ronald M. Whyte
24  INTERNATIONAL EXPORT, LTD., a              )
    Cayman Islands Company Limited by Shares;  )
25  and DOES 1 through 20, inclusive,          )
                                               )
26               Defendants.                    )   Complaint Filed:    April 23, 2007
                                               )
27  _____         )
                                               )
28  FIJI WATER COMPANY LLC, a Delaware         )
    limited liability company; FIJI WATER      )

LA1768681.3
207102-10007                                   DEFENDANTS' REPLY IN SUPPORT OF
C-07-2258-RMW                                  THEIR MOTION FOR SUMMARY JUDGMENT

COMPANY HOLDINGS LLC, a Delaware )
limited liability company; PARAMOUNT )
INTERNATIONAL EXPORT, LTD., a )
Cayman Islands Company Limited by Shares; )
and DOES 1 through 20, inclusive, )
)
              Counterclaimants, )
)
    v. )
)
CG ROXANE LLC, a California limited )
liability company, )
)
              Counterdefendant. )
)

---

DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY
JUDGMENT

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   THE PHRASE IS GENERIC AND INVALID AS A MARK ........................................ 2

    A.   "Bottled At The Source" Is Undisputedly Generic. ........................................ 2

        1.   Plaintiff Submitted Nothing To Rebut Strong Evidence Of
            Genericness. ............................................................................... 2

        2.   Plaintiff's Incorrect Analysis Ignores The Widespread
            Evidence That "Bottled At The Source" Is Viewed
            Generically. ................................................................................ 3

        3.   Plaintiff's Remaining Arguments Are Also Misplaced ............... 6

    B.   Plaintiff Produced No Evidence Of Secondary Meaning ................................ 8

        1.   Plaintiff Is Not Entitled To A Presumption Of Secondary
            Meaning. ..................................................................................... 8

        2.   Because Of Non-Exclusive Use, Plaintiff Cannot Show
            Secondary Meaning;  Evidence Of Sales And Marketing
            Alone Is Insufficient. .................................................................. 8

III.  EVIDENCE OF FAIR USE IS NOT DISPUTED ........................................................ 11

IV.   PLAINTIFF PRESENTED NO EVIDENCE OF CONFUSION ................................. 12

V.    PLAINTIFF ESSENTIALLY ABANDONS ITS REMAINING ADD-ON
    CLAIMS ...................................................................................................................... 14

    A.   Trademark Dilution (Claims 3 and 4). ........................................................... 14

    B.   Injury To Business Reputation (Claim 6). ...................................................... 14

    C.   Conversion (Claim 7). .................................................................................... 14

    D.   Interference (Claims 8 & 9);  False Advertising (Claim 10). ........................ 15

    E.   Negligent and Intentional Misrepresentation (Claims 11 and 12). ................ 15

    F.   CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abercrombie Fitch Co. v. Hunting World Inc.,*
    537 F.2d 4 (C.A.N.Y. 1976)...................................................................................... 3

*Burlesci v. Petersen,*
    68 Cal.App.4th 1062 (1998)................................................................................... 14

*California, Bell v. Harley Davidson Motor Co.,*
    539 F.Supp.2d 1249 (S.D.Cal. 2008) ................................................................... 11

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ............................................................................................... 7

*Classic Foods Int'l Corp. v. Kettle Foods Inc.,*
    468 F.Supp.2d 1181 ...................................................................................3, 5-6, 9

*Co-Rect Products, Inc., v. Marvy! Advertising Photography Inc.,*
    780 F.2d 1324 (8th Cir.1985)................................................................................ 8

*Colaprico v. Sun Microsystems, Inc.,*
    758 F.Supp. 1335 (N.D.Cal.1991) ...................................................................... 15

*Colt Defense LLC v. Bushmaster Firearms Inc.,*
    486 F.3d 701 (1st Cir. 2007) ..........................................................................4, 7-8

*Eniva Corp. v. Global Water Solutions, Inc.,*
    440 F.Supp.2d 1042 (D.Minn. 2006) ................................................................. 14

*Exquisite Form Indust. Inc. v. Exquisite Fabrics of London,*
    378 F.Supp. 403 (S.D.N.Y. 1974)....................................................................... 10

*Gracie v. Gracie,*
    217 F.3d 1060 (9th Cir.2000)............................................................................... 15

*Krav Maga Ass'n of America, v. Yanilov,*
    464 F.Supp.2d 981 (C.D.Cal.2006)....................................................................... 4

*Levi Strauss & Co. v. Blue Bell, Inc.,*
    778 F.2d 1352 (9th Cir.1985)............................................................................... 10

*Levi Strauss & Co. v. Genesco, Inc.,*
    742 F.2d 1401, 222 USPQ 939 (1984)................................................................. 9

DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY
JUDGMENT

**Page(s)**

*Meeker v. Meeker*,
   2004 WL 2554452 (N.D.Cal. 2004)..................................................... 15

*Mushroom Makers, Inc. v. R. G. Barry Corp.*,
   441 F.Supp. 1220 (S.D.N.Y. 1977) .................................................... 10

*New Kids on the Block v. News Am. Publ'g, Inc.*,
   971 F.2d 302 (9th Cir.1992)............................................................... 11

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
   210 F.3d 1099 (9th Cir. 2000) ............................................................ 14

*Retail Services Inc., v. Freebies Publishing*,
   364 F.3d 535 (4th Cir. 2004)................................................................ 3

*Rudolph Intern. Inc. v. Realys, Inc.*,
   482 F.3d 1195 (9th Cir. 2007)...........................................................4-5

*Schwanns IP LLC v. Kraft Pizza Co.*,
   460 F.3d 971 (8th Cir. 2006) ................................................................ 3

*Self Realization Fellowship Church v. Anada Church of Self-Realization*,
   59 F.3d 902 (9th Cir. 1995) .................................................................. 8

*Self-Insurance Institute of Am. v. Software and Info. Indus. Ass'n*,
   208 F. Supp. 2d 1058 (C.D. Cal. 2000) ............................................. 13

*Sengoku Works Ltd. v. RMC Intern., Ltd.*,
   85 F.3d 1217 (9th Cir.1996)................................................................. 7

*Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*,
   735 F.2d 346 (9th Cir.1984)............................................................... 15

*Surgicenters of Am., Inc. v. Medical Dental Surgeries Co.*,
   601 F.2d 1011 (9th Cir.1979)............................................................... 3

*Thane Intern., Inc. v. Trek Bicycle Corp.*,
   305 F.3d 894 (9th Cir. 2002) .............................................................. 14

*Thrifty-Tel, Inc. v. Bezenek*
   46 Cal.App.4th 1559 (1996) ............................................................... 14

*Tone Bros. Inc., v. Sysco Corp.*,
   28 F.3d 1192 (Fed. Cir.1994) ............................................................... 8

*Transgo Inc., v. Ajac Transmission Parts Corp.*,
   911 F.2d 363 (1990) ........................................................................... 11

**Page(s)**

**STATUTES**

15 U.S.C. 1064 ................................................................................................................ 15

15 U.S.C. § 1052(f) ......................................................................................................... 10

**OTHER AUTHORITIES**

Rule 56(d) ....................................................................................................................... 7-8

DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION FOR SUMMARY
JUDGMENT

I.      INTRODUCTION

## IS ANYONE REALLY CONFUSED?

 

Plaintiff is clearly grasping here.  Fifteen years ago it made a decision to include "bottled at the source" on its bottled water product.  Plaintiff thought this idea was so ingenious, it eventually registered this mark with the United States Patent and Trademark Office, and is now suing Defendants for trademark infringement arising out of Defendants' use of a similar, but not identical, phrase "bottled at source."  The point Plaintiff is missing in all of this is that its "idea" to use the phrase "bottled at the source" was not an original one.  For decades prior to its use, this phrase was, and continues to be, used in the bottled water industry, media, and the public at large, as a generic phrase identifying how and where a bottled water product is produced.[1]

In light of this fact, it is not surprising that Plaintiff failed to produce **any** evidence to back up its claims.  Instead, Plaintiff chooses to nitpick Defendants' evidence and then run it through a puzzling, unsupported, and incomplete legal analysis.  In the end, what is clear is that nobody is confused by Defendants' fair use of a universally generic phrase.  Accordingly, summary judgment in favor of Defendants is proper as to Plaintiff's entire, ill-founded, complaint.

---

[1] Had Plaintiff actually disclosed this fact to the USPTO, it is unlikely that its registration would ever have been accepted.

1  II.    **THE PHRASE IS GENERIC AND INVALID AS A MARK**

2       A.    **"Bottled At The Source" Is Undisputedly Generic.**

3              1.    **Plaintiff Submitted Nothing To Rebut Strong Evidence Of Genericness.**

4       Defendants' evidence of genericness is vast and **not contradicted** by any opposing

5  evidence.  Where a large segment of the bottled water industry, high profile media sources, and

6  others in the public, including Plaintiff, use the alleged mark to identify a type of bottled water

7  (some since well before Plaintiff's first use), it evidences that the phrase is generic, understood by

8  the public to be as much, and not allowed trademark protection.  In sum, Defendants presented the

9  following evidence supporting a conclusion of genericness:

10      (1) Evidence that many competing brands sold in the United States consistently use

11          the phrase: *over 20* examples of companies in the U.S. market who use the phrase

12          on their bottle; evidence that over *50 additional* companies use it plainly and

13          regularly in their marketing and informational materials; evidence that the phrase

14          has been used on bottles for decades; evidence that one company with 15% of the

15          market uses it on their bottle, and many more well know brands also use it not only

16          in marketing, but on their bottle (*e.g.* San Pellegrino, Sole, Perrier, Voss, etc.);

17          evidence that even before Plaintiff started using it, the largest mineral water

18          company in the United States at the time, Calistoga, used the phrase across the top

19          of their bottle, and still does.  *See* Defendants' Motion at pp. 6-9.

20      (2) Evidence of use in the media and press: Defendants submitted over 50 articles

21          from the United States and around the world demonstrating the common use and

22          understanding of the phrase.  *Id.*

23      (3) Further evidence of public use:  Defendants submitted internet articles;

24          evidence from various retailers; a book on bottled water; a letter from Nestle

25          Waters, one of the largest water companies in the world; testimony from Thomas

26          Mooney, and other material demonstrating pubic use.  *Id.*

27      (4) Evidence of use in trademark registrations. Defendants cited many trademarks

28          that use the phrase.  *Id.*

(5) <u>Evidence of generic use by Plaintiff itself</u>: Defendants cited four examples of use of the phrase by Plaintiff, not in the context of a source identifying mark.[2]  *See* Defendants' Motion pp. 8-9.  Much of the evidence produced with Plaintiff's Opposition also demonstrates generic use by Plaintiff.

Other than nitpicking at some of it, Plaintiff has failed to rebut or contradict any of Defendants' evidence establishing the fact that "bottled at the source" is generic.  The record contains not one witness, expert, survey, or document suggesting that "bottled at the source" is a source identifier, as opposed to merely being a common descriptive, generic phrase, universally used in the bottled water lexicon to identify a type of bottled water.  To be clear, the **only** evidence Plaintiff presents in it opposition at all is evidence of its own sales and marketing, purportedly used to establish secondary meaning.  To the extent Plaintiff is suggesting that this disproves genericness, it does not.  *See Surgicenters of Am., Inc. v. Medical Dental Surgeries Co.,* 601 F.2d 1011, 1016 (9th Cir.1979); *Classic Foods Int'l Corp. v. Kettle Foods Inc.,* 468 F.Supp.2d 1181, 1190* ("[g]eneric marks receive no trademark protection, even with a showing of secondary meaning"); *Abercrombie Fitch Co. v. Hunting World Inc.*, 537 F.2d 4, 9  (C.A.N.Y. 1976) ("no matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification," it cannot obtain a mark over a generic phrase).

## 2.  Plaintiff's Incorrect Analysis Ignores The Widespread Evidence That "Bottled At The Source" Is Viewed Generically.

Nonetheless, and with little explanation or citation to law, Plaintiff repeatedly asserts the confusing argument that Defendants' evidence does not show "primary significance" in consumers' minds.   But that is exactly what this evidence shows.  Genericness and primary significance can be shown by any competent source.  *Schwanns IP LLC v. Kraft Pizza Co.*, 460 F.3d 971, 974 (8th Cir. 2006) ("evidence of the relevant public's understanding of a term may be

---

[2] Plaintiff critiques this evidence, but fails to acknowledge its blatant uses of the phrase not as a mark and the fact that such uses "strongly" demonstrate that the phrase is an established part of the bottled water lexicon, not subject to a monopoly.  *Retail Services Inc., v. Freebies Publishing*, 364 F.3d 535, 545 (4th Cir. 2004).

1   obtained from any competent source"); *Krav Maga Ass'n of America, v. Yanilo*v, 464 F.Supp.2d

2   981, 987-89 (C.D.Cal.2006) (finding a term to be generic based on several hundred pages of use

3   of the term by "the media, the industry, and the relevant public").  Primary significance simply

4   means that the significance of the phrase is more often first (or "primarily") seen as indicating the

5   type of product rather than as a source identifier of the producer.  As discussed above, Defendants'

6   evidence of use by competitors, the media, retailers, and the public at large is **exactly** the type of

7   undisputed evidence that this Court can rely on for proof that the public's "primary"

8   understanding of the phrase is not in reference to any specific producer, but rather to a type of

9   water.  *Id.*; Defendants' Motion at 6-9.  The case law on this issue is clear, and Plaintiff did not

10   cite a single case refuting it.  *See* Defendants' Motion at 6-9.

11       Plaintiff also puzzlingly asserts—**again without citation to law**— that Defendants'

12   evidence must be, but is not, always evidence of "generic use" used to name the "genus" of a

13   bottled water product.  Although Defendants' evidence sufficiently meets even this standard (more

14   than even Plaintiff admits), Plaintiff's argument nonetheless ignores the proper question of

15   genericness and too narrowly defines the analysis.  Defendants' evidence shows genericness under

16   the well-settled test that terms are generic if their primary significance is to "**describe the type of**

17   **product rather than the producer."**  *Rudolph Intern. Inc. v. Realys, Inc.,* 482 F.3d 1195, 1198

18   (9th Cir. 2007) (emphasis altered) (citing *Filipino Yellow Pages*, 198 F.3d at 1147); *see also Colt*

19   *Defense LLC v. Bushmaster Firearms Inc.,* 486 F.3d 701, 706-09 (1st Cir. 2007) ("a generic term

20   answers the question of 'what are you?' while a mark answers the question of 'where do you come

21   from?'") (for a term to be generic, its primary significance…must be to identify "the nature of a

22   good, rather than its source"); *KP Permanent Make-Up, Inc.,* 408 F.3d 596, 604 (9th Cir. 2005)

23   (the question is whether, "consumers understand the word to refer only to a particular producer's

24   goods or whether the consumer understands the word to refer to the goods themselves").

25   Defendants' evidence meets these standards:  it is both direct and circumstantial evidence that the

26   phrase is primarily and commonly used by the public, and understood by the public, "to describe

27   the type of product" and "what it is" – **not** the brand or who produced it.  It does not matter

28   whether the particular phrasing or usage is "generic" or refers to a genus or a name, so long as it is

4

1   used in this manner to describe a type of product and **evidences** the public's understanding. *See*

2   *Rudolph*, at 1198 (for instance, "[a]djectives, as well as nouns, can be generic marks"). Nothing

3   more is needed under Ninth Circuit law and Plaintiff has cited no authority to the contrary.

4           In fact, Defendants' evidence is similar to evidence used in many cases granting summary

5   judgment for similarly used generic terms. *See* Defendants' Motion at 6-9*; see also Rudolph,* at

6   1198 (holding that the term "disinfectable" was a "generic adjective" because it "relates to the

7   type of product"); *Classic Foods* at 1191 (relying on evidence of use and marketing by companies

8   using the word kettle "to define their cooking process" and finding that "[w]hen consumers see

9   'kettle' linked directly to the cooking process by several companies, they are informed that a kettle

10   chip is a potato chip that has, or appears to have been, cooked in a kettle….**the term 'kettle' does**

11   **not help identify the source of the product because many different producers advertise their**

12   **cooking process as kettle cooking**") (emphasis added).   Here, upwards of 75 bottled water

13   companies in the United States use the exact phrase in some manner to describe their product as a

14   particular type.  In an industry with only a few hundred producers, many of which cannot even

15   claim to be "bottled at the source," the number who use the phrase is significant.  The common

16   thread in all of the evidence is that the **exact phrase** Plaintiff is trying to monopolize is used

17   **universally** to "describe the type" of bottled water bottled at the source, as opposed to bottled

18   after transportation or at a non-original source.  This evidences that the public views the phrase,

19   and uses it, in a generic sense, never in reference to a source or brand.

20           The fact that the phrase is used descriptively does not mean it is not used "generically" as

21   well.  Due to the particular syntax of the phrase, "bottled at the source" it is often used in the

22   context of a larger sentence, or as part of a larger phrase to describe the type of water and its

23   geographical source.  Genericness certainly can, and often is, evidenced by this merely descriptive

24   type of use.  *See Classic Foods*, at 1194 ("common descriptive" phrases are generic even though

25   also descriptive) ("[a] generic designation is…simply 'the ultimate in descriptiveness' because it is

26   necessary for producers to use that term to inform consumers about the nature and identity of their

27   goods.")  (citing *McCarthy*); *Rudolph*, at 1197 (generic terms referred to as "common descriptive"

28   terms; finding an adjective, "disinfectable," to be generic).

**3.     Plaintiff's Remaining Arguments Are Also Misplaced**

Plaintiff also points out that **some** of Defendants' evidence is from international sources. While this is true, it still serves to support Defendants' position of widespread genericness and, in any case, **most** of the evidence submitted by Defendants is domestic.  All, or virtually all, of the bottles Defendants identified with the "bottled at the source" on their label are sold and readily available in the United States.  *See* Supplemental Declaration of Mark Campbell, ¶ 2 (many of the exhibits also show U.S. addresses on the bottles).  The large majority of the marketing and other materials are from the United States as well.  *Id.*  The major brands using the phrase are clearly domestic, and even the international products and media are available to American consumers.

Plaintiff also argues that genericness must be shown at the time prior to Defendants' use. However, Plaintiff has done nothing to refute Defendants' evidence of long term generic use of the phrase.  Plaintiff accepted the evidence that as early as 1985, the largest brand of mineral water in the United States used the phrase on the face of its bottle.  Campbell Decl. Ex. F.  Other long time brands who use the phrase, such as San Pellegrino and Perrier, have plainly been around for decades.  Defendants produced trademark registrations using the phrase as far back as the mid 1980s to 1990s.  *Id.* at 357, 355, 363, 365.   Plaintiff also did not dispute evidence that Nestle Waters, one of largest bottled water companies, has used the phrase "for decades."  Campbell Decl., Ex E.  Defendants also submitted media articles dating back several years, into the 1990's and earlier, showing generic use of the phrase.  *See e.g., id.* at 286, 314, 320, etc..  Other undisputed evidence also shows long time use.  *See* Campbell Decl., Ex. Q (Mooney Depo. at 27:3-9, 32:20-33:9) (testimony that "bottled at the source" is a generic phrase that has been used by dozens of brands for decades).  There is no evidence contradicting any of this.

In any case, the point of law regarding timing is not applicable here.  The Lanham Act allows a mark to be challenged at anytime once it becomes generic.  *See. Classic Foods*, at 1188, n.10.  The cases cited by Plaintiff do not contradict this or hold that a use prior to genericness permanently makes a mark valid.  *Classic Foods* cited by Plaintiff merely says that the relevant date "in [that] case is 1999."  *Id.*  The cases it relies on give no explanation for this point of law or how it would apply to this case.  Here, at the earliest, the relevant date would be 2002, the date of

Plaintiff's trademark application filing, before which Plaintiff bears the burden of showing validity. *Sengoku Works Ltd. v. RMC Intern., Ltd*., 85 F.3d 1217, 1219 (9th Cir.1996) (the presumption for registered marks dated to the filing date of the application). In this case, however, the first relevant date is 2004, when Defendants purchased the Fiji Water assets. The undisputed evidence clearly shows genericness since well before any of these potentially relevant dates.[3]

Finally, Plaintiff's claim that its registration entitles it to a "strong" presumption is not true. First, as noted above, the presumption at most only goes back to 2002 when Plaintiff applied to register the purported mark. *Sengoku*, at 1219. Moreover, courts have rejected Plaintiff's argument that the alleged presumption is "strong" such that it can overcome summary judgment. Finding that the defendant "overstated" the significance of registration, the court in *Colt Defense* held that "a registered mark serves to establish a rebuttable presumption....However, once this presumption has been overcome, the party holding the certificate of registration may not avoid summary judgment simply by pointing to the certificate as evidence." *Colt Defense*, at 708 (citing *Retail Services*, at 543-44). The presumption can be overcome by a preponderance of the evidence. *Yellow Cab*, at 928. Defendants' unchallenged evidence of universal and widespread use easily overcomes this rebuttable presumption.[4]

\* \* \* \* \* \* \*

After evidence of generic use of the phrase was introduced, it became Plaintiff's burden to produce evidence that the public "primarily" views the phrase as a source identifier. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (nonmoving party must rebut moving party's case);

---

[3] Although it has presented no evidence disputing Defendants' evidence or otherwise, to the extent the Court finds that Plaintiff may be able to show validity at some relevant point, Defendants are entitled to a Rule 56(d) finding that the mark is currently generic or generic at a identifiable time, and request that the Court make such a finding. *See* FRCP 56(d).

[4] Also, because Plaintiff did not give the USPTO all of the facts about third party usage in its application for registration, the decision of the USPTO and any presumption based thereon should be given little or no deference here. Not only did Plaintiff's application conspicuously ignore references in the case law to "exclusive" use as factor in deciding secondary meaning, Plaintiff failed to disclose that many of its competitors were using the claimed mark at the time of the application. In fact, Plaintiff went as far as to declare that its use was substantially "exclusive" for 12 years. Because this central factor was not disclosed to the USPTO, its decision and any presumption based thereon should be given little, if any, weight.

*Self Realization Fellowship Church v. Anada Church of Self-Realization*, 59 F.3d 902, 910 (9th Cir. 1995) (finding that once defendant produced evidence of genericness, Plaintiff was required to present evidence in opposition to avoid summary judgment).  Plaintiff produced not one piece of evidence showing this and therefore, summary judgment must be entered.

**B.      Plaintiff Produced No Evidence Of Secondary Meaning**

   **1.      Plaintiff Is Not Entitled To A Presumption Of Secondary Meaning.**

There is simply no evidence that Plaintiff's claimed mark has any secondary meaning in the minds of consumers.  Plaintiff first argues that its registration gives it a "strong" presumption of secondary meaning.  However, any presumption of secondary meaning does not apply in this case because the alleged infringing mark was in use **prior** to registration.  *Co-Rect Products, Inc., v. Marvy! Advertising Photography Inc.*, 780 F.2d 1324, 1330 (8th Cir.1985) (a "user must…show that secondary meaning existed prior to the date on which the defendant commenced using the same or similar mark"); *Tone Bros. Inc., v. Sysco Corp.*, 28 F.3d 1192, 1201 (Fed. Cir.1994).  The evidence is undisputed that Fiji Water used the phrase "bottled at source" as early as 1997, five years before Plaintiff's registration. *See* Plaintiff's Opposition at 3:6-9.  Therefore, Plaintiff is not entitled to any presumption.  Even if Plaintiff were entitled to a presumption of secondary meaning (which it is not), at most, the presumption only shifts the burden to the defendant to show by a preponderance of evidence that the mark has no secondary meaning. *Colt Defense*, at 708 (citing *Retail Services*, at 543-44).  Defendants have easily met this burden.[5]  *See also* n. 4 above (Plaintiff's registration obtained by submitting incomplete evidence).

   **2.      Because Of Non-Exclusive Use, Plaintiff Cannot Show Secondary Meaning;  Evidence Of Sales And Marketing Alone Is Insufficient.**

Plaintiff next argues that it has established secondary meaning based only on evidence of its sales and advertising.  For a number of reasons, this is not sufficient.  "Courts can only find secondary meaning if the descriptive term has become so associated with the product that it serves

---

[5] To the extent the court relies on the presumption, Defendants are entitled to a Rule 56(d) finding that Plaintiff's trademark was not presumed valid or with secondary meaning, at the latest, prior to the date of its trademark application.

primarily as a designation of the source rather than of a characteristic of the product." *Classic Foods*, at 1195 (citing *Schwans IP*).   The evidence of significant third-party use discussed above demonstrates that Plaintiff's marketing has not created secondary meaning because the public's understanding of the phrase is not to "designate" Plaintiff as a single source, but rather to identify a type of bottled water. *Id.* Plaintiff entirely ignores this fact, just as it ignored it in its application to the USPTO when it wrongly claimed 12 years of substantially "exclusive use." *See* footnote 4, *supra*; Campbell Decl., pp. 24, 30.

In fact, non-exclusive use is enough to support a finding of no secondary meaning on summary judgment, even where there is evidence of established presence in the market. *Classic Foods*, at 1195-96.  Plaintiff's claim that it could not find in *Classic Foods*, or anywhere, the holding that evidence of non-exclusive use alone can justify a finding of no "secondary meaning," underscores its serial avoidance of the issue.  In *Classic Foods*, even in a case where the plaintiff had a **34% market share** and evidence of other marketing, the court held that, on summary judgment, the Plaintiff still could not establish secondary meaning in a term because it was commonly used by third-parties, and therefore could not, as a matter of law, be associated enough with the plaintiff as a singular producer.  *Id.* at 1185, 1195-96.  The *Classic Foods* court found that "the abundance of competitors who use the term" in connection with the product at issue prevented the claimed mark-holder "from proving secondary meaning." *Id.*

Moreover, the *Classic Foods* court found that, "long and continuous use alone is insufficient to show secondary meaning where the use is not substantially exclusive." *Id.* at 1195. In support of this proposition, the court in *Classic Foods* cited *Flowers Industries Inc. v. Interstate Brands Corp.*, 5 USPQ.2d 1580 (TTAP 1987), in which the TTAB, despite evidence of significant sales over an extended time period, found that because of non-exclusive use, an applicant's mark did not have secondary meaning.  The *Flowers* court, interestingly, held that it did not matter whether the third-party usage was merely descriptive, or otherwise.  "Thus, when the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an application for registration under Section 2(f) cannot be successful, for distinctiveness on which purchasers may rely is lacking under such circumstances." *Levi Strauss*

1   *& Co. v. Genesco, Inc*., 742 F.2d 1401, 222 USPQ 939, at 940-941 (1984) (discussing a trademark

2   application); *see also* 15 U.S.C. § 1052(f) (requiring exclusive use to establish secondary

3   meaning).  Here, the third-party use of the phrase at issue is not just widespread, but universal.

4   There *cannot* be secondary meaning. *Id.*

5        Given the above, Plaintiff's sales and advertising evidence is irrelevant.  Even factoring

6   out Plaintiff's failure to establish exclusivity, its sales and advertising evidence is still insufficient

7   to prove secondary meaning.  "The basic element of secondary meaning is…the mental

8   association by a *substantial segment of consumers* and potential consumers 'between the alleged

9   mark and a single source of the product.'" *Levi Strauss & Co. v. Blue Bell, Inc*., 778 F.2d 1352,

10  1354 (9th Cir.1985) (emphasis added).  Plaintiff's evidence of **some** sales and advertising is weak

11  and does not show association by a "substantial segment of consumers."  The evidence of sales is

12  not put into context, and although it might appear numerically large, it is actually a small percent

13  of the overall market.  Nor did Plaintiff provide evidence of which bottle designs were sold, when

14  they were sold, or what its market share is.  Only recent marketing and bottle examples were

15  provided.  There is also no evidence of what portion of the market is exposed to the advertising

16  and over what period of time.  Plaintiffs discovery responses prove the dearth of evidence. *See*

17  Defendants' Motion at 10:11-16.  Most notably, Plaintiff did not produce **any** survey evidence,

18  consumer testimony, or anything else showing actual consumer association.

19       Moreover, what little evidence there is does not show widespread use of just "bottled at the

20  source."  Rather, Plaintiff's evidence demonstrates that on most occasions, its use of the phrase is

21  in conjunction with, and subservient to, other phrases, marks and logos.  Often in the evidence

22  submitted, the phrase is hardly visible.  Without more detailed evidence, this evidence is

23  meaningless, and cannot demonstrate "substantial" consumer association with "bottled at the

24  source" merely because the phrase may have been seen by the public along with other marks.

25  Indeed, courts have stated that sales and advertising alone are alone not enough to show secondary

26  meaning. *See e.g. Mushroom Makers, Inc. v. R. G. Barry Corp**.**,* 441 F.Supp. 1220, 1227 n.27

27  (S.D.N.Y. 1977) ("mere sales and advertising figures are inconclusive on the issue"); *Exquisite*

28  *Form Indust. Inc. v. Exquisite Fabrics of London,* 378 F.Supp. 403, 411 (S.D.N.Y. 1974)

10

1    (advertising alone did not provide basis for determining the extent of customer awareness).

2   **III.**    **EVIDENCE OF FAIR USE IS NOT DISPUTED**

3       In opposition to Defendants' fair use claim, Plaintiff makes three principle arguments.

4   Plaintiff first asserts that where there is a likelihood of confusion, there can be no fair use. This is

5   simply wrong. If such were the case, the fair use defense would be obliterated in its entirety.

6   Second, Plaintiff argues that Defendants may not avail themselves of the fair use defense because

7   they are using "bottled at source" as a mark. The undisputed facts demonstrate otherwise.

8   Finally, Plaintiff argues that fair use is inapplicable because Defendants acted in bad faith in using

9   the mark. What Plaintiff is really saying is that because Defendants refused to cede to its threat of

10   litigation, they are acting in bad faith. This is complete nonsense.

11       In support of its first argument, Plaintiff cites *Transgo Inc., v. Ajac Transmission Parts*

12   *Corp.*, 911 F.2d 363 (1990). However, this case merely stands for the unremarkable proposition

13   that certain confusing use can be "unfair." The court in *Transgo* did not hold that the existence of

14   **any** confusion precludes a fair use defense. *Id* at n.2. Plaintiff's citation to *Cairns v. Franklin*

15   *Mint Co.* is also unavailing. In *Cairns*, a case involving **nominative** fair use, the court mentioned

16   that the fair use defense applies even in the presence of confusion. More importantly, these cases

17   pre-date *KP Permanent Make-Up, Inc.*, 543 U.S. 111, 124 (2004), where the Supreme Court held

18   that a defendant has no independent burden to negate the likelihood of any confusion in raising a

19   fair use defense. Therefore, "some possibility of consumer confusion must be compatible with fair

20   use." *Id.* at 121; *see also California, Bell v. Harley Davidson Motor Co.*, 539 F.Supp.2d 1249,

21   1257-59 (S.D.Cal. 2008) (granting summary judgment on the fair use defense).

22       Next, Plaintiff's assertion that Defendants' use of "bottled at source" "as a trademark" is

23   absolutely incorrect. A mark serves a source identifying function. *See New Kids on the Block v.*

24   *News Am. Publ'g, Inc.,* 971 F.2d 302, 308 (9th Cir.1992). Defendants use "bottled at source"

25   discreetly, in small white letters on the back of their product serves no such function. They use

26   the phrase "bottled at the source" on the back of two of their bottles in narrative text explaining

27   where their water comes from. These two phrases also appear in a similar manner on Defendants'

28   website and other marketing materials. Each of the witnesses who testified in this matter firmly

1  stated that this use is to identify a fact, not as a source identifying function. Defendants' Motion p.

2  12:3-11. The best evidence of this fact is on is the bottle itself. The phrase "bottled at source" is

3  accompanied by Defendants' house mark and is not stylized. Moreover, it is not significantly set

4  off, even though many other non-mark phrases on the bottle are (i.e. "impermeable rock" and

5  "500ml" on some bottles). Defendants' use of this phrase simply does not "distinguish"

6  Defendants from others as a mark would do. At best, Defendants' use does nothing more than tell

7  consumers where the water was bottled and is suggestive of nothing more than a geographical fact.

8       Finally, Defendants' motion provides sufficient evidence that their use, just like many

9  other brands, is in good faith. Defendants' Motion at 12:12-20. Defendants' response to an

10  unfounded cease and desist letter is not evidence of "bad faith." In fact, it is Plaintiff that is acting

11  in bad faith, by claiming a generic mark, widely used in the bottled water industry, as its own.

12  **IV.    PLAINTIFF PRESENTED NO EVIDENCE OF CONFUSION**

13       Absolutely nobody is likely to be confused by Defendants' use of "bottled at source."

14  Plaintiff has provided **zero** evidence showing otherwise, and in fact admits that it has no evidence

15  of actual confusion, and therefore fails to meet its burden.

16       (1) Plaintiff's mark is weak. Plaintiff's only argument is that evidence of sales and

17  advertising of a bottle (not the mark) give it secondary meaning and "strength." But Plaintiff cites

18  no authority supporting its assertion that advertising equates to strength. As addressed above,

19  advertising alone is insufficient to establish secondary meaning. Nor could it evidence strength in

20  light of the substantial third party use. *See* Defendants' Motion at 14. Plaintiff's argument to the

21  contrary does not get around relevant case law holding that third-party use "weakens" a mark.

22       (2) Examined in context, the marks are dissimilar. Simply looking at bottles of Crystal

23  Geyser and Fiji Water illustrates the obvious fact that the parties' use of the phrases are entirely

24  dissimilar. Defendants do not concede that absence of the "the" in the phrase is unimportant.

25  Indeed it is. If Plaintiff's mark is as strong as it claims, a different wording of it would certainly

26  be noticed by the public and would allow the public to distinguish and not confuse the products.

27  Also, Defendants' use of the phrase is not capitalized, is sized differently, colored differently, on a

28  different part of the label, and segregated. Defendants' use on its website and other materials are

1   also vastly different than Plaintiff's "mark." The house mark and trade dress are always used on

2   the bottle, and the phrase is right under "fijiwater.com." This negates confusion. *See* Defendants'

3   motion at p. 16 (cases holding that a house mark negates confusion).

4       (3) <u>Relatedness of the goods.</u> The products, while both bottled waters, are not "identical"

5   as Plaintiff's is natural artesian water from Fiji, and has different packaging and other

6   characteristics. Plaintiff did not respond to Defendants' argument that lack of "likelihood of

7   association" means the goods are not "related" under this factor. Consumers do not associate

8   these products because of the differing target markets; there is no evidence suggesting otherwise.

9       (4) <u>Defendants' intent.</u> All of the evidence shows Defendants' good faith efforts to

10  properly describe their product. There simply is no evidence suggesting intent to copy. Refusing

11  to cease and desist legal use of a generic phrase, that had been used on Fiji Water for over 10 years

12  without objections from Plaintiff, does not demonstrate bad intent.

13      (5) <u>No actual confusion shown.</u> Incredibly, Plaintiff concedes that after over a year of

14  litigation, and 10 years of overlapping use, it cannot produce one instance of actual confusion.

15  This is exceptionally telling, but not surprising. Plaintiff's lack of evidence of third party

16  confusion may be properly viewed as a lack of evidence of any confusion at all. *Self-Insurance*

17  *Institute of Am. v. Software and Info. Indus. Ass'n*, 208 F. Supp. 2d 1058, 1075 (C.D. Cal. 2000)

18  (summary judgment granted in part due to lack of evidence of confusion).

19      (6) <u>Marketing channels.</u> Defendants admitted that their bottled water product is, at times,

20  marketed through channels of distribution that are similar to Plaintiff's, but this does not mean

21  they are the same. Plaintiff ignores the key fact that, based on factors such as pricing and the

22  target audience of advertising, Defendants do not consider Plaintiff to be their direct competitor.

23  Defendants' Motion p. 18. Thus even though both products are, at times, sold in similar types of

24  retail stores, they are not always ultimately marketed to the same class of consumer.

25      (7) <u>Expansion plans.</u> Plaintiff's claims about its plans to expand have no admissible

26  evidentiary support. They are merely speculative assertions. Moreover, plans to expand to Asia

27  are irrelevant to trademark infringement in the United States. Plaintiff has not met its burden here.

28  There is simply no evidence of hindrance of expansion plans due to Defendants' use of the phrase.

(8) <u>Degree of care.</u>  Plaintiff merely dismisses the fact that Defendants' water is "premium" and although it is not always bought based on brand loyalty, is bought based on its other quality factors such as taste, place of origin, or health attributes.  Some care is exercised. *See Eniva Corp. v. Global Water Solutions, Inc.*, 440 F.Supp.2d 1042, 1052 (D.Minn. 2006).

## V.   PLAINTIFF ESSENTIALLY ABANDONS ITS REMAINING ADD-ON CLAIMS

### A.   Trademark Dilution (Claims 3 and 4).

Plaintiff asserts that its alleged evidence of secondary meaning is evidence of famousness, but cites no authority to support this claim.  The famousness standard ("household name") is very high.  Considering Plaintiff has only produced limited evidence of marketing, there is no reason to think its weak descriptive mark is actually "famous," especially considering the non-exclusive use. *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 907-912 (9th Cir. 2002) (use of the same or similar marks by third parties "strongly suggests that [a mark] is not famous").  Importantly, Plaintiff also failed to respond to the other issues raised in Defendants' motion, most notably Plaintiff's failure to produce any evidence of dilution.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (negation of an element, or failure to produce evidence on it after discovery, warrants summary judgment).  There is obviously no triable issue here.

### B.   Injury To Business Reputation (Claim 6).

Plaintiff failed to respond to the bulk of Defendants' arguments here.  This is not a valid claim, but a measure of damages.  It also requires injury to be shown, which Plaintiff has failed to do.  Defendants' arguments need not be reiterated.  This claim apparently has been abandoned.

### C.   Conversion (Claim 7).

Plaintiff again ignores some key arguments.  Specifically, it did not respond to its failure to provide evidence of damages, which is an essential element to the claim. *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066, 80 (1998); Campbell Decl., Ex. O (response to interrogatory 13, no damages).  This failure alone warrants summary judgment because an element of the claim cannot be established.  *Nissan Fire*, at 1102.  Plaintiff  also did not demonstrate any "wrongful" action.  In any case, Plaintiff's legal analysis is flawed: conversion claims are generally not allowed for intangible property, nor should they be. *Thrifty-Tel, Inc. v. Bezenek* 46 Cal.App.4th 1559, 1565

1   (1996); *Meeker v. Meeker*, 2004 WL 2554452, *5-6 (N.D.Cal. 2004).

2       **D.     Interference (Claims 8 & 9);  False Advertising (Claim 10).**

3       Plaintiff did not respond to Defendants' arguments here.  They do not require repeating.

4   Summary judgment is warranted on these three claims.

5       **E.     Negligent and Intentional Misrepresentation (Claims 11 and 12).**

6       Again, Plaintiff sidesteps the bulk of Defendants' arguments on these claims.  First,

7   Defendants made a true statement, not a misrepresentation: their water is in fact bottled at the

8   source.  Second, nothing about Plaintiff, or its products, was misrepresented.  Third, this claim

9   cannot be based on a statement to a third party.  *See e.g. Colaprico v. Sun Microsystems, Inc.,* 758

10  F.Supp. 1335, 1337 (N.D.Cal.1991).  Fourth, although requested in discovery, Plaintiff has

11  produced no evidence of damages, a necessary element that could *never* be proven here.  Finally,

12  although Plaintiff "disputes" Defendants' "good faith" intent in using the phrase, it has not put

13  forth any *evidence* proving such bad faith intent, and certainly has not put forth any evidence of

14  "intent to deceive" consumers, which is an entirely different issue.

15      **F.     CONCLUSION**

16      For the foregoing reasons, Defendants respectfully request that the Court grant its Motion

17  for Summary Judgment in their favor on each of Plaintiff's causes of action, as well as on

18  Defendants' Counterclaim for trademark cancellation[6].

19  Dated:  May 23, 2008                    LOEB & LOEB LLP
                                            MARK D. CAMPBELL
20

21

22                                          By:  /s/ Mark D. Campbell
                                                 Mark D. Campbell
23                                               Attorneys for Defendants

24  _____

25  [6] Plaintiff's argument that Defendants must establish damages to obtain cancellation is misplaced.
    Invalid marks are unenforceable and can be cancelled at any time even when there is merely a
26  *belief* of damages.  15 Us.S.C. 1064; *see e.g. also. Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 735
    F.2d 346 (9th Cir.1984) (real interest or belief enough to obtain cancellation); *Gracie v. Gracie*,
27  217 F.3d 1060, 1065 (9th Cir.2000) (noting an invalid mark should be cancelled).  Regardless,
    Defendants are obviously damaged by their inability to openly and freely use the phrase "bottled
28  at the source" and the necessity to defend this lawsuit.